ELIES, Appellant, vs. ELIES, Respondent.

*October 9—November 4, 1941.*

For the appellant there was a brief by *Rogers & Owens,* and oral argument by *Harlan B. Rogers* and *Bruce J. Rogers,* all of Portage.

For the respondent there was a brief by *Sigman & Sigman* of Appleton, and oral argument by *Abraham Sigman*.

FOWLER, J.   The appeal involves two orders.   One a modifying of the decree of divorce so as to take the custody of the only child from the mother and awarding it to the father; the other denying the application of the mother for suit money and attorney's fees in connection with the application for modification of the judgment.   The child is a girl, and was two years and three months old at the time of the modification of the judgment.

The court found and adjudged on hearing the application for modification of the judgment as to custody of the child that the mother is an unfit person to have the custody and that the father is a fit person to have such custody and is now giving and has been giving the child proper care since she last came into his custody.   During this period of ten months the child has been in the immediate care of five different women, although her health has been uniformly good, and the women were all competent to conserve the child's health and give her proper physical care.

The judgment of divorce was entered February 14, 1940. The plaintiff wife sued for divorce on the ground of cruelty. The husband denied the allegations of cruelty and counterclaimed asking divorce on the ground of cruelty practiced by improper association with a Dr. Harris.   Before the trial the husband withdrew the answer and counterclaim and judgment was taken by default pursuant to stipulation of the parties.

On March 2, 1940, the defendant moved the court to vacate the judgment, declare the stipulation void, and relieve the defendant from its terms, reinstate the answer and counterclaim of the defendant, and proceed to trial on the issues raised by the pleadings.

On May 21, 1940, the court denied this motion, and found that the matters on which the defendant based his motion

were the same matters that were involved under his counterclaim, and were duly considered by the defendant and his counsel before the stipulation was entered and his counsel "entirely and completely advised" him in relation thereto before the case was finally heard; that apparently "the main object of the motion is to change the custody of the child," and that the court was not satisfied from the testimony submitted "that the judgment awarding the custody to the plaintiff should be changed."

The plaintiff on June 22, 1940, was married in Iowa to Dr. Harris. This marriage and the circumstances leading up to it are the only additional matters that occurred after the denial of the application to vacate the judgment up to the time of the granting of the instant order changing the custody of the child.

On the hearing of the instant motion the court received evidence and manifestly considered that the motion not only covered the matters next above referred to, but all that preceded the entry of the judgment and formed the basis of defendant's counterclaim. We are of opinion that receipt and consideration of these matters was improper, and the court was limited to consideration of the conduct of the plaintiff since the hearing of defendant's previous motion, and such facts, if any, as the plaintiff concealed from the court upon the previous hearings. The plaintiff's previous association with Dr. Harris however was not concealed in those hearings. The nature of that association was the subject of investigation and determination and could not on the instant motion be relitigated. The facts proper for consideration may be briefly summarized as the plaintiff's going to Iowa and the circumstances thereof, the marriage of the plaintiff in Iowa, her present residence there as the wife of Dr. Harris, her expectation of continuance of such residence, her ability and likelihood of giving the child proper care and nurture and of exercising a proper influence upon the child's morals and the likelihood of the plaintiff prejudicing the child

against the defendant if the custody of the child were left with her.

That the mother is fond of the child, properly disposed toward her, and capable of giving her proper personal and cultural care in her home in Iowa, is made entirely clear by the evidence adduced upon the motion. The only thing left as bearing upon the change of custody is the plaintiff's marriage, association with Dr. Harris, since the denial of the motion to vacate the judgment and her marriage to him within one year from the entry of the judgment contrary to the terms of the judgment and admonitions of the court against marriage within one year given upon rendition of the judgment. It is without dispute that the residence of Dr. Harris and the plaintiff in Iowa is *bona fide* and that its continuance permanently was contemplated when they were married. It is also without dispute that Dr. Harris took competent legal counsel prior to his marriage to the plaintiff, and was advised by such counsel that if the parties had acquired a *bona fide* legal residence in Iowa and continued to reside there the marriage was legal under the Iowa statutes and court decisions, and that the counsel who gave such advice reiterated it to plaintiff upon her asking him if he had so advised the doctor. The trial court recognized that "willing violation of the orders of this court and the laws of Wisconsin [relating to marriage within one year] does not *per se* prove her unfitness to have the custody" of the child.

In juxtaposition with this statement the court found that plaintiff had "shown a wilfulness and a lawlessness" because after signing the stipulation that the defendant should have custody of the child for a ten-day period "she refused to abide by it. She wrote Mr. Elies: 'I refuse to let Carol Joy [the daughter] leave our house;' 'you are not welcome in the home of my parents any longer;' 'My life is my own . . . you need not bother about coming after Carol Joy Sunday.'" We have searched the record and there is no evidence by testimony or affidavit, as to any such statement by the plain-

tiff. If such testimony was given, it must have been given on the hearing to set aside the judgment. Whether so given or not it has no place here. The court, as above stated, denied the application to set aside the judgment and in its findings thereon reiterated the adjudication of the judgment of divorce that the plaintiff is a fit and proper person to have the custody of the child. That adjudication was *res judicata,* and the court could not properly on the present application repudiate or withdraw it, except for conduct of the plaintiff subsequent to the denial of the application to vacate the judgment, or concealment by her on previous hearings of facts relevant to such hearings.

The court found on the instant motion that the plaintiff "has no respect for the law nor the orders" of the court and "an oath in court means little or nothing to her," giving as a reason for such finding that she stated in an affidavit "that the defendant's allegation that he does not care to have Dr. Harris, who broke up his home, become the foster parent of his child, is a false allegation of fact as to any past act on the part of Dr. Harris and an unjustified accusation as to the future." This statement to our minds does not warrant the court in so stigmatizing or regarding the plaintiff.

The court also found that the plaintiff's scheming and conniving with Dr. Harris destroyed the defendant's home and the home and marriage of Dr. Harris and his first wife; that the plaintiff "did not speak the whole truth as to what the actual facts were" in the original divorce hearing. These findings indicate that the trial judge now accepts entirely the charge and insinuations of the defendant which he repudiated on the application for vacation of the judgment and in effect on the instant motion retried that application and the issues of the case as originally made by the pleadings in order to support the instant order for the change of the child's custody. This the trial judge could not do. The matter of association with Dr. Harris having been previously litigated, the judge should have decided the instant application on what,

and only what has occurred since denial of the application to vacate the judgment. As to such matters the court might discard the evidence of the plaintiff so far as he considered it false. But the evidence by others than the plaintiff shows that the plaintiff has done nothing since the previous hearing to support an inference on the part of the trial judge that she is unfit to have the custody of her child except to remarry within one year from the entry of the divorce judgment, and it also shows, aside from the testimony of the plaintiff, that she had the advice of counsel that that marriage is valid. The evidence further shows, also independent of testimony of the plaintiff, not only that the marriage should be held free from taint because of the parties to it entering into and consummating it knowing or believing it to be invalid, but also that under our own decisions it was valid because contracted by the parties after they had become *bona fide* residents of Iowa, expecting to remain such residents indefinitely, and valid according to the statutes and decisions of that state.∎ *Fitzgerald v. Fitzgerald,* 210 Wis. 543, 246 N. W. 680; *Owen v. Owen,* 178 Wis. 609, 190 N. W. 363. As to the moral taint the court seems to feel that the marriage is subject to because of her marriage within one year, even that would seem to be removed by remarriage with Dr. Harris after expiration of a year from entry of each of their respective divorce judgments. We perceive no basis in the evidence for the finding of the court last stated in its findings that "it would be a great wrong to this child to move it from the home and the atmosphere in which it now lives to live in the home and in the atmosphere created by the association and marriage of Dr. and Ruth Harris," and we consider that the finding of the court that the plaintiff is an unfit person to have the custody of the child is contrary to the great weight and clear preponderance of the evidence.

In proceedings to change the custody of the child, the child's welfare is the primary consideration. *Jones v. State*

*ex rel. Falligant,* 211 Wis. 9, 17, 247 N. W. 445. There is no need for other citations in support of that proposition.

It is the accepted doctrine of this court stated in *Jenkins v. Jenkins,* 173 Wis. 592, 595, 181 N. W. 826, and reiterated in *Acheson v. Acheson,* 235 Wis. 610, 294 N. W. 6, that:

"Nothing can be an adequate substitute for mother love—for that constant ministration required during the period of nurture that only a mother can give because in her alone is duty swallowed up in desire; in her alone is service expressed in terms of love. She alone has the patience and sympathy required to mold and soothe the infant mind in its adjustment to its environment. The difference between fatherhood and motherhood in this respect is fundamental and the law should recognize it unless offset by undesirable traits in the mother. Here we have none so far as mother love is concerned."

The following from the *Acheson Case, supra,* p. 615, is applicable here:

"It is apparent from the nature of respondent's employment and his hours of work that if the custody of these children is to remain with him, they will, generally speaking, be in the custody and care of . . . a stranger in blood. However good her intentions, though they be the very best, they will not be an adequate substitute for a mother's love and care."

We consider that the above quotations apply to and rule the instant case. In our view the instant mother's love for her child, that she uniformly gave it good and loving care while it was in her custody, and her fitness morally and otherwise to have the child's custody, are established, and view to the contrary is against the great weight and clear preponderance of the evidence.

In this connection we cite the holding of *Hersey v. Hersey,* 271 Mass. 545, 171 N. E. 815, 70 A. L. R. 518, expressed in a note in 17 Am. Jur. p. 519, § 684, as follows:

"The court will not award the custody of a girl seven years of age to her father, although he is a person of good char-

acter and habits and able to care for her properly at the home of his own mother and although the mother of the child, to whom its custody had been awarded in a divorce proceeding, had made it difficult for the father to have communication with the child, by removing from the state and contracting a second marriage, and the child is known by the name of the second husband, where it appears that the mother is giving the child a good home and proper bringing up."

The above requires reversal of the order changing the custody of the child. The circumstance of the residence of the Harrises outside the state somewhat complicates the situation. But a court that granted a divorce may award the custody of a child to a parent residing outside the state wherein the judgment was granted. *Bennett v. Bennett,* 228 Wis. 401, 403, 280 N. W. 383. Visitation of the child by the defendant in Iowa will be no more complicated or no more a hardship to the defendant than would be the visitation in Wisconsin by the plaintiff provided for by the order appealed. In view of the tender age of the child we consider that for the present at least dual custody would be contrary to the child's welfare. The desires of a parent must yield to this consideration.

We consider that the order of the court refusing to award suit money and counsel fees against the defendant to enable her to defend against the motion for modification of the judgment to award the custody of the child to the husband must be affirmed. In *Coad v. Coad,* 40 Wis. 392, 393, the husband appealed from the judgment granting the wife a divorce. The wife married another man before the husband's time for appeal had expired, and her second husband was living. The court held that under those circumstances, the second husband "may be held to have assumed his wife's litigation and its expenses beyond taxable costs. The statute goes on the wife's dependence on her husband, or late husband, for expenses of litigation. And we are not inclined to hold that it

was intended to entitle her to this sort of bigamous dependence, on two husbands at once." The statute in force when the *Coad Case, supra,* was decided, sec. 16, ch. 111, R. S. 1858, provided that in divorce actions the court might "in its discretion, require the husband to pay any sums necessary to enable the wife to carry on or defend the action during its pendency," and it might "adjudge costs against either party." The present statute, sec. 247.23, provides that in every action for divorce the court "may, during the pendency thereof, make such orders concerning the . . . custody . . . of the minor children and to require the husband to pay such sums . . . to enable her [the wife] to carry on or defend the action and in relation to the persons or property of the parties as in its discretion shall be deemed necessary or proper." Sec. 247.25 provides for revision of the judgment concerning the custody, maintenance, and education of the children "and make a new judgment concerning the same as the circumstances of the parents and the benefit of the children shall require." Doubtless proceedings to amend the judgment as to custody of the children are "during the pendency of the action" within the meaning of sec. 247.23. But the order for suit money is within the "discretion" of the court. We perceive no abuse of discretion, especially in view of the holding of the *Coad Case,* that the "second husband" assumes the litigation of the wife. If marriage within time for the husband's appeal imposes this assumption, with equal reason the assumption follows when the marriage is within the year in which the wife may again marry. If it were made to appear that the second husband is not financially able to provide funds to defend the proceedings to modify the judgment we might have a different question, as the welfare of the child requires that suit money be somehow provided the wife, but there is no showing or indication that Dr. Harris is unable to supply his wife with funds necessary to her defense. The *Coad Case* has been cited with approval in *Sumner v. Sumner,*

54 Wis. 642, 643, 12 N. W. 21, wherein it is said: "The statute goes on the theory of the wife's dependence upon her husband for the expenses of the litigation." It is also cited in *Clarke v. Burke,* 65 Wis. 359, 361, 27 N. W. 22, to the point that "expenses in prosecuting an action may under certain circumstances be wholly refused" to the wife.

*By the Court.*—The order of the county court changing the custody of the child is reversed, and the record is remanded with directions to the trial court to vacate the order entered and deny the motion of the defendant for change of custody and make such order for visitation of the child by the defendant in the home of the plaintiff as the court may deem suitable and consistent with the welfare of the child. The order denying suit money to the plaintiff is affirmed. No costs will be taxed against either party in this court, but the appellant will pay the clerk's fees.

FRITZ, J., dissents from mandate reversing order as to custody of child.

PER CURIAM (*filed December 13, 1941*). It is in effect stated in the above opinion that the advice by an Iowa lawyer referred to in the opinion given to the plaintiff and Dr. Harris that their marriage in Iowa would be valid was correct in point of law. Sec. 247.37 (1), Stats., provides that a judgment of divorce from the bonds of matrimony "so far as it affects the status of the parties it shall not be effective until the expiration of one year from the date of the granting" thereof.

The decisions of courts of other jurisdictions under the precise language quoted seem to be conflicting. The statement was not necessary to support the judgment. We therefore withdraw the statement referred to, *ante,* p. 66, 300 N. W. 496, column 1, and leave the point for determination when it shall arise in some case before us wherein it is directly in issue.