# CASES DETERMINED

AT THE

# August Term, 1910.

KOHL, Appellant, vs. KOHL, Respondent.

*March 16—October 4, 1910.*

*Divorce: Cruel and inhuman treatment: Division of property: Disregarding stipulation.*

1. Ill treatment of one spouse by the other which, though not operating directly on the body, is of a nature well calculated to inflict pain and suffering in body and mind and thus to produce injurious results which make cohabitation dangerous to the former's health and life and to render it wholly impracticable for him to properly discharge his marital obligations, is cruel and inhuman treatment in the law and constitutes ground for divorce.

2. Upon the granting of a divorce to the husband on the ground of cruel treatment by the wife, a division of his property by which the wife was awarded $1,200 in money, the household goods, and $3 per week to be paid to her by the husband for support of the children during minority, one of them being five years old and the other seventeen and able to sustain herself, and the husband was to retain the homestead and other property, of the probable market value of about $2,500 in all, out of which he must pay the costs and expenses of the litigation, is affirmed on an appeal by the wife.

3. A stipulation in such case by which the husband, not knowing that the wife had possession of $1,200 of his money, had agreed to give her the homestead and pay her $3 per week for the support of the children, was properly disregarded by the trial court upon refusal of the wife to pay over $1,200 to the husband.

APPEAL from a judgment of the circuit court for Fond du Lac county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

Plaintiff brought an action for divorce from the defendant, alleging cruel and inhuman treatment toward her; nonsupport, although the defendant was amply able to support her and their minor children; defendant's uncontrollable temper, which made it dangerous for her to live with him; and that she had faithfully discharged her duties as wife and had observed her marriage vows during the whole of their married life.   The defendant answered denying the allegations of the complaint charging grounds for a divorce, and alleging a counterclaim for divorce on the ground of cruel and inhuman treatment.   The action was tried in the county court of Fond du Lac county, and at the conclusion of the trial the court granted a new trial.   Upon an affidavit of prejudice filed by the defendant the action was removed to the circuit court for Fond du Lac county.   Before the trial of the action the parties entered into a stipulation whereby, in the event of the defendant being found to be entitled to a divorce and of a final division of the defendant's property being decreed, then the plaintiff was to have the homestead of the parties absolutely and the care and custody of the minor children.   By this stipulation the defendant also agrees "to pay $3 per week as and for alimony for said · minor children until Eunice reaches twenty-one years of age and Fayette reaches the age of twenty-one."

No evidence was introduced in behalf of the plaintiff, and upon the trial of the action the evidence was confined to the cause of action set up in the defendant's counterclaim.   It appeared that the troubles of the parties related to the refusal of the wife to sign papers which would enable the defendant to make an advantageous trade of some of his property and to a transaction in which the plaintiff had obtained possession of between $1,600 and $1,700 belonging to the defendant through signing some papers enabling the defendant to trade a piece of his property.   Thereafter she persistently refused to sign papers to enable the defendant to sell or trade any of

his property, or to enable him to raise money for use in his business, or to save parcels thereof from threatened loss by foreclosure of liens against them. Plaintiff also refused to allow the defendant to have the use of any of the money in her possession for the payment of his debts or for use in his business.

In their domestic life, also, the evidence tended to show that the plaintiff had adopted an attitude toward the defendant and a course of conduct which made the defendant's life miserable. She neglected the cooking of his meals and at times refused to have any meals prepared. As to his bed and room, sometimes she would care for them and sometimes the defendant would be compelled to care for them himself. When the defendant, through an accident, lost part of his hand, the plaintiff treated him spitefully and maliciously, and declared, "That's good enough for him." While suffering from this injury she refused to nurse or care for him, prepared no food for him, and persisted in annoying and worrying him by humming and singing, though requested not to so spitefully abuse him while he was suffering and in great pain. Plaintiff persisted in such conduct and made it necessary for the defendant to secure others to nurse and care for him and to prepare his food. He was ultimately, after his recovery, forced to go to the home of his son for board. On one occasion plaintiff locked the door of the house against him, refused to open it, and when he forced the door he found that she had removed bedding from his bed and had placed it in her own bed. When the defendant went to her room for it she struck him, and because the defendant then slapped her she caused his arrest. Upon his confession to this act in court he was fined. The defendant was also arrested upon the plaintiff's complaint on the ground of nonsupport and was put under bonds to keep the peace. There was evidence that the plaintiff used vile and abusive language to the defendant in the presence of the minor children and spoke of

him in terms which tended to deprive him of their regard and respect. The defendant testified that the plaintiff took money from his pockets, was extravagant, and frequently accused him of infidelity.

During the trial the court questioned plaintiff's sanity, and thereupon she was examined by physicians and was declared sane by them. Upon being examined as to what disposition she had made of the $1,600 or $1,700 obtained from her husband, she claimed to have none of it and that she had used it for her support; but the evidence disclosed that shortly before the commencement of the action she had withdrawn $1,400 from banks.

The court found that the plaintiff had at least $1,200 of the defendant's money in her possession. It was also found from the evidence that the total value of the defendant's property, over and above incumbrances of $1,200 upon it, was $4,400, and that he owed unsecured debts to the amount of $1,400. The court found that an absolute divorce should be granted to the defendant, but, on the ground that a division of the property under the stipulation between the parties would be unjust to the creditors of the defendant, refused to make a final division of the defendant's property in accordance with the stipulation. The court directed in its findings that the household furniture should go to the plaintiff, except that the defendant might remove and have the furniture and bedding situated in the room occupied by him; that if the plaintiff should within thirty days turn over and pay to the defendant the $1,200 which she had retained out of the defendant's property, as above stated, then the stipulation for the distribution of the husband's estate should stand approved, but in case of her default to do so the stipulation should be disregarded and the husband's estate should then be distributed by awarding her this sum of money out of his estate and the household goods, as above specified; and that the defendant should pay the plaintiff $3 a week for the

maintenance of the minor children during their minority. One of these children was then seventeen years old and able to sustain herself. The other was five years old. Plaintiff did not pay over the $1,200 and judgment was entered accordingly. This is an appeal from the judgment.

*J. M. Gooding,* for the appellant.

For the respondent there was a brief by *Morse & Williams,* and oral argument by *D. O. Williams.*

The following opinion was filed April 5, 1910:

SIEBECKER, J. The court found that the allegations of the defendant's counterclaim were sustained by the evidence and awarded judgment thereon divorcing the parties. The plaintiff's contention is that this was erroneous because the facts found do not constitute cruel and inhuman treatment authorizing the granting of a divorce. The facts found clearly show that the plaintiff was guilty of wilfully and persistently causing defendant unnecessary suffering in body and mind, and that as a natural consequence thereof cohabitation with the plaintiff became dangerous to the defendant's health and subversive of the marriage relation by making it impossible for him to discharge the duties imposed thereby. Though the ill treatment may not be said to have operated directly on the body, it however was of a nature well calculated to inflict pain and suffering in body and mind, and thus to produce injurious results which made cohabitation dangerous to the defendant's health and life and to render it wholly impracticable for him to properly discharge his marital obligations. When the treatment of either spouse by the other so affects the injured party and the marriage relation, it is cruel and inhuman treatment in the law and constitutes grounds for a divorce. We think the facts found establish a good cause for a divorce, and that the court was justified in dissolving the marriage bonds.

It is claimed that the court erred in not approving the

stipulation of the parties for a final division and distribution
of the defendant's property. It appears that the parties.
made this stipulation when the defendant did not know that
the plaintiff still had $1,200 of his money in her possession.
The husband's estate consisted of a homestead of an esti-
mated value of $3,500; other real estate of an estimated value
of about $2,900, which was incumbered by claims amounting
to $1,200; personal property, aside from the household goods,
of the probable value of $200; and the money which the
plaintiff held. It also appears that the defendant owed
$1,400 of unsecured debts. The stipulation awarded the
plaintiff the homestead and obligated the defendant to pay
the plaintiff $3 a week as support for the minor children, one
of whom, at the time of the entry of judgment, was seventeen
years of age and the other five.

Upon the trial of the cause the court expressed its disap-
proval of this division of the defendant's estate, but suggested
that if the plaintiff would voluntarily pay the $1,200 cash in
her possession to the defendant the stipulation would be ap-
proved. This the plaintiff refused to do. The court there-
upon refused approval of the stipulated division of the de-
fendant's estate and adjudged that the plaintiff be awarded
the $1,200 in money and $3 per week for the support of the
minor children during their minority, one of whom was then
seventeen years of age and abundantly able to support her-
self. By this division the defendant retained his homestead
and some personal property, the equity in his northern Wis-
consin land, and a vacant lot in Ripon. While these equities
are probably of some value to the defendant they cannot be
held to amount in value to the estimated market value less the
incumbrances, and it seems that by charging the defendant
with these equities at a reasonable amount and with the other
property allowed him, and deducting therefrom his present in-
debtedness, it will leave him, in round numbers, two thirds of
his property, of a probable market value of not to exceed

.$2,500.    Out of this he must pay the costs and expenses of this litigation.    We find this to be a just division of the defendant's estate, in the light of the fact that the divorce was granted because of plaintiff's misconduct toward and ill treatment of the defendant and of all the other accompanying facts and circumstances of the case.    Upon the whole record the judgment of the circuit court must be approved.

The plaintiff moved this court for an allowance of suit money, temporary alimony, and support for the minor children.    We consider that an allowance of $50 to her as suit money in prosecuting this appeal and a determination that she recover her disbursements for printing the case and brief will be just and equitable.    The respondent is to pay the clerk's fees in this court.

*By the Court.*—It is so ordered.

A motion for a rehearing was denied October 4, 1910.