Bird, Appellant, vs. Bird, Respondent.

*March 9—April 6, 1920.*

*Divorce: Cruel and inhuman treatment: Evidence: Wife's attention to others: Unfriendliness toward husband caused by his misconduct: Appeal: Finding not appealed from conclusive.*

1. On an appeal by the wife alone from a judgment refusing both parties a divorce because both were guilty of cruel and inhuman treatment, the finding of the trial court as to the cruelty of the wife only is reviewable.

2. In order to constitute cruel and inhuman treatment the conduct of the guilty party must be such as to cause mental

suffering to the other and render impairment of health probable, so that the continuance of the marriage state would be
dangerous.   Whether certain conduct is cruel and inhuman
depends on its effect on the offended spouse.

3. Evidence that the wife took automobile rides with a male
   roomer, played cards with him in his room, and upon one
   occasion wrote him an affectionate letter, is insufficient to
   show cruel and inhuman treatment of the husband by the
   wife, under the circumstances.

4. Nagging of the husband by the wife and her refusal to take
   meals with him or accompany him to public places, where
   such conduct was the natural result of the husband's confessed immoral conduct with other women, is not sufficient
   to furnish the husband grounds for divorce.

APPEAL from a judgment of the circuit court for Dane
county: E. RAY STEVENS, Circuit Judge.   *Reversed.*

Action for divorce.   Both parties alleged cruel and inhuman treatment and prayed for affirmative relief.   The
court found "that defendant has been guilty of a course of
cruel and inhuman treatment toward plaintiff, consisting of
association with other women, some of whom were of lewd
and immoral character; that he frequently told the plaintiff
of his association with such women and informed her that
he had had sexual intercourse with them."   Also, "that
plaintiff has been guilty of a course of cruel and inhuman
treatment toward the defendant, consisting of nagging the
defendant and refusing to take meals with him or accompany him to places in public, and of keeping a man roomer
in their home contrary to the wishes and against the protests of the defendant, to which roomer the plaintiff wrote
a sentimental letter, and in whose room she has passed considerable time playing cards and with whom she has taken
automobile rides."   Judgment was entered dismissing the
plaintiff's complaint and defendant's counterclaim, from
which judgment plaintiff appealed.

For the appellant there was a brief by *Gilbert & Ela* of
Madison, and oral argument by *Frank L. Gilbert.*

*Rufus B. Smith* of Madison, for the respondent.

· OWEN, J.   The court having found both parties guilty of cruel and inhuman treatment, refused a divorce to either, upon the authority of *Hiecke v. Hiecke,* 163 Wis. 171, 157 N. W. 747, and cases there cited, where it is held that a divorce will not be granted to one spouse where he or she has been guilty of conduct also amounting to grounds for a divorce.   Only the plaintiff appealed.   The finding that defendant has been guilty of a course of cruel and inhuman treatment is therefore to be regarded as a verity.   The question to be reviewed is whether the evidence supports the finding of the trial court that plaintiff has been guilty of a course of cruel and inhuman treatment towards the defendant.

According to the finding of the trial court, the conduct of the plaintiff which was held to constitute cruel and inhuman treatment consisted of "nagging the defendant and refusing to take meals with him or accompany him to places in public, and of keeping a man roomer in their home contrary to the wishes and against the protests of the defendant, to which roomer the plaintiff wrote a sentimental letter, and in whose room she has passed considerable time playing cards and with whom she has taken automobile rides."   In order to constitute cruel and inhuman treatment the conduct of the guilty party must at least be such as to naturally cause great mental suffering to the other and render impairment of health probable, so that further efforts to perform the duties of the marriage state would be dangerous.   *Hiecke v. Hiecke, supra.*   Whether certain conduct is cruel and inhuman depends upon the effect it has upon the offended spouse.   Conduct which will cause great anguish and suffering to a sensitive nature will be passed unnoticed by one of a crass disposition.   The evidence which tends to establish cruel and inhuman treatment on the part of the plaintiff must be considered with reference to its effect upon the defendant.   Her culpable conduct may be treated under two

heads: (a) her relations with a man roomer; and (b) her personal attitude towards the defendant.

Plaintiff and defendant lived in a house in the city of Madison which was owned by the plaintiff. Two or three of the rooms were rented to male roomers. Defendant claims that plaintiff was unduly familiar with one of these roomers, which familiarity consisted of taking some automobile rides with him, playing cards in his room, and, upon one occasion, writing him an affectionate letter. The evidence shows that the roomer owned an automobile, and that occasionally, with the full knowledge and apparent consent of the defendant, plaintiff went on automobile rides with him. We find no suggestion in the evidence that defendant ever objected to these automobile rides. It further appears that, occasionally, she went into his room and played cards with him. It appears that at all such times the door was open and they were in full view of any one passing along the hall. There is no suggestion in the evidence that the meetings in this room were clandestine, or that anything immoral ever occurred, or that they were ever in the room together with the door closed. Neither is there evidence that the defendant ever objected to this conduct. It is conceded that upon one occasion, when the roomer was out of town, the plaintiff wrote him a letter, affectionate in its terms, but to which no name was signed. This letter came into the hands of the defendant. He recognized the handwriting and called for an explanation, bringing both parties together. It was explained to him that the letter was a joke; that it was written in a spirit of foolishness and to lead the roomer to believe that it came from some unknown young lady. This explanation seems to have been accepted by the defendant, because the matter was never brought up again. The defendant, however, preserved the letter for future use, hiding it in the basement. It was brought forth to serve its purpose when the plaintiff brought a divorce action against him in 1915, after which it was

again laid away in a place of security, but, before the bring-
ing of this action, had been destroyed by the defendant.
The record is entirely barren of any suggestion that the
defendant was humiliated or caused any grief, anguish, or
suffering by reason of the relations existing between the
plaintiff and this roomer. In fact, until the occasion here-
inafter to be referred to, there was apparently the friend-
liest feelings between the defendant and this roomer. These
relations were disturbed, however, by this circumstance:
The plaintiff suspected the defendant of having illicit rela-
tions with a certain woman in the city of Madison. At the
request of plaintiff this roomer followed the defendant one
night and came upon him in the company of this woman.
Defendant became very angry and demanded that he leave
the house. Plaintiff, however, prevailed upon him to tem-
porarily withdraw his objections to his remaining in the
house because, as he states, the room rent was paid up for
some time in advance. According to defendant's testimony,
he consented to his remaining in the house until the expira-
tion of the time to which the room rent was paid. He
claims, however, that after that time the matter was re-
ferred to between him and plaintiff at intervals of from one
to two months. This she denies. It is without dispute
that there were occasional, if not frequent, altercations be-
tween plaintiff and defendant, and it seems quite clear to
us that if this matter was brought up as defendant claims, it
was in the nature of a counter-charge and by way of de-
fense when his own misconduct was under criticism by the
plaintiff.

It is not without significance that this action was com-
menced January 20, 1919, at which time this roomer had
been absent in the service of the United States army for a
period of six months. Defendant evidently did not feel
sufficiently aggrieved at the presence of this roomer to
prompt him to institute divorce proceedings, but remained
quiescent until plaintiff brought this action, and then pleaded

Bird v. Bird, 171 Wis. 219.

the relations of plaintiff and this roomer as grounds for affirmative relief, when such relations had ceased for a period of six months. We are forced to the irresistible conclusion that these relations did not amount to cruel and inhuman treatment of the defendant.

We next come to consider the personal attitude of plaintiff towards the defendant. According to the finding of the trial court, this consisted of "nagging the defendant and refusing to take meals with him or accompany him to places in public." Having in mind the conduct of which the trial court convicted the defendant, it is not surprising that such conduct was the subject of frequent altercations between them. Such a state of affairs was the natural result of defendant's own wrongdoing. To say that her constant nagging, as the court terms it, furnishes the defendant grounds for a divorce, is to say that a wife cannot remonstrate, by word and action, against the confessedly immoral conduct of her husband without thereby subjecting herself to an action for divorce. We are not disposed to dignify such a proposition by extended consideration. Woman's nature is such that a wife will not submit in peace and silence to gross violations of marriage vows on the part of a husband.

*By the Court.*—Judgment reversed, and cause remanded with directions to grant the prayer of plaintiff's complaint.