BRADLEY, Respondent, v. BRADLEY, Appellant.

*February 3—March 8, 1960.*

524

For the appellant there was a brief and oral argument by *A. D. Sutherland* of Fond du Lac.

For the respondent there was a brief and oral argument by *John W. Calhoun* of Fond du Lac.

BROADFOOT, J.  Plaintiff was granted a divorce from the defendant on August 8, 1956. The judgment was reduced to writing and filed on November 13, 1956. By the judgment of divorce there was a partial division of property and the defendant was ordered to pay to the plaintiff the sum of $250 per month as alimony. The parties had two daughters, one born in 1935 and married at the time of the divorce, and a minor daughter who was born in 1940 and who was attending high school at that time. The custody of the minor daughter was awarded to the plaintiff and the defendant was ordered to pay the sum of $85 per month for her maintenance and support with a reservation that the court could amend said provision in the event the daughter desired to attend college upon being graduated from high school.

At the time of the divorce the parties owned three parcels of real estate in the city of Fond du Lac. There was the home of the parties, which was free from incumbrance.

There was a dwelling located at 47 West Twelfth street, which was incumbered by a mortgage to the defendant's father in the sum of $5,000; and there was a duplex located on East First street, which was subject to two mortgages totaling $5,000. The plaintiff was awarded the homestead and the duplex on East First street, subject to the mortgages. The defendant was awarded the dwelling on West Twelfth street, subject to the mortgage. The defendant also owned property near Augusta, Georgia, used as a trailer court and laundry, which was awarded to him. The defendant is a dentist practicing his profession in Fond du Lac. He has remarried and lives in a home owned by his wife. At the time of the divorce there was a finding that the plaintiff was in poor health.

As grounds for modification of the divorce judgment the defendant alleged in the trial court, and now contends, that his financial condition has changed substantially for the worse, while the plaintiff's health and financial condition have improved.

The bill of exceptions before us does not contain the testimony in the divorce action. The trial court who heard the divorce action was in a much-better position to pass upon the record than we are because of that fact. The record does indicate that the defendant's net income from the practice of his profession was approximately the same in 1958 as it was in 1956. His net rental from the West Twelfth street dwelling for the year 1958 was $512. The net rent for that property in 1956 does not appear. It may have been less in 1958 because there is testimony that the mortgage had been increased. Whether the monthly rental had increased does not appear.

The defendant's main contention with respect to the change in his financial condition is due to his claim that

he sustained severe loss by reason of his ownership and operation of the Georgia property. The record does not show when he purchased this property. He turned it over to a corporation as of January 1, 1956, but dissolved the corporation as of December 31, 1957, and took back the assets and assumed the liabilities of the corporation. The defendant testified that the corporation lost more than $5,000 per year in both 1956 and 1957. He operated the property from January 1, 1958, to March 15, 1958, at a loss of $1,128. He then rented the property, which consists of a trailer camp and laundry, for a gross rental of $350 per month, and for the entire year of 1958 he had a net gain from the property of $620. Upon cross-examination the defendant stated that he had testified in the divorce action that the corporation was losing money.

He testified that the corporation sold house trailers. They were sold on terms and the contracts were sold to a finance company with a guaranty of payment by the corporation. On January 1, 1958, the defendant had a contingent liability on these contracts of $120,000. On December 1, 1958, the amount of said contracts outstanding was $56,924. During the year 1958 the defendant had to take over two of said contracts, together with the trailers. The unpaid balance on the contracts was $3,904.90. The trailers were later sold and the defendant sustained a loss thereon of $1,501.

The hearing in these proceedings was held on May 27, 1959. As of that date the defendant testified that demands had been made upon him to pay two contracts, totaling $3,039.13, that were in default. At that time he had not repurchased the contracts nor taken over the trailers, nor did he make any estimate of what his loss might be. Based on the same percentage, and if he does take over the con-

tracts and the trailers, there might be an anticipated loss of $1,100 to $1,200.

The defendant contends that the value of the Georgia property has greatly depreciated because of the rerouting of an interstate highway. Just when the change was made does not appear of record. In the bill of exceptions there is a financial statement dated December 31, 1955, showing the land and buildings only to be worth more than $26,000. There is also in the record an appraisal of the property dated August 26, 1957, by the Augusta Real Estate Board, Inc., that shows the land and buildings were appraised at $31,750. This appraisal report indicates that a four-lane superhighway had then been constructed and that much of the traffic formerly using Highway 1, which was several hundred feet south of the defendant's property, had been diverted to the new highway. We must assume that the highway was being constructed at the time of the divorce action.

The defendant further testified that he had been unable to sell the Georgia property or to borrow thereon. No explanation was given as to what effort he had made to borrow on or to sell the same. We cannot tell from the record what amount, if any, he attempted to borrow, from whom he attempted to borrow, or on what terms. The same is true as to his statement that he had been unable to sell. There is nothing in the record to show whether or not he listed the same with a real-estate broker, whether he had advertised, or just what efforts he had made. The appraisal and rental income indicate that it has substantial value.

The defendant also filed a statement of receipts and disbursements without a starting date or ending date. We assume from the context that it covers the year 1958. The

statement, after reciting the contingent liability, is as follows:

"Net gain

    (a)  From dental business...................$12,229
    (b)  From Georgia property.................  620
    (c)  Rent from Twelfth street property.........  512

                      "Total net income....$13,361

"Amounts paid out not included under businesses or rentals:

    (a)  Loss on trailers.......................$ 1,501
    (b)  Attorney fees..........................  249
    (c)  Black-topping Georgia property..........  575
    (d)  Laundry equipment for Georgia property...  306
    (e)  Paid on Twelfth street property..........  791
    (f)  Daughter's support and education in 1958. Support $375 plus $38 in checks, plus deposit slips in 1958 equaling $875.....Total.....$ 1,288
    (g)  Paid my parents for support.............. 1,000
    (h)  Federal income tax....................  593
    (i)  State income tax......................  483
    (j)  Real-estate tax.......................  291
    (k)  Lorraine Bradley insurance policy.........  101
    (l)  Personal insurance....................  328

                  "Total paid out......$ 7,506

                  "Total net income....$13,361
                  "Total paid out......$ 7,506

                          $ 5,855
"Alimony payments........................  3,000

    "Balance left for my living expenses......$2,855"

The amounts paid out include capital expenditures and attorney fees in connection with the Georgia property. There is also an amount listed for the support of his parents without any supporting testimony that the same was necessary.

The payment on the Lorraine Bradley insurance policy was a final payment and will be a nonrecurring item.

On the basis of the testimony presented the trial court found that the circumstances of the defendant had not changed since the entry of the judgment to such an extent that the court would be justified in amending the judgment.

In its memorandum decision directing the entry of an order dismissing the application, the trial court said nothing about the health or financial condition of the plaintiff. At the time of the hearing the plaintiff had just completed a nine months' course in cosmetology and had started serving a two-year apprenticeship to make her eligible to operate her own beauty parlor. At the time of the hearing she was earning $10 per week. Her gross rentals during 1958 were $2,280. The net rent, after deducting expenses and depreciation, amounted to $729.29 for the year. No testimony, medical or otherwise, appears in the record that shows there has been any improvement in her health. The only reference in the present record as to plaintiff's health in 1956 is contained in the memorandum opinion and in the findings of fact in the divorce action. From the nature of the ailment referred to in the decision and findings it is too early to determine whether there has been any marked improvement in her health. The trial court was in a better position to determine this issue than we are from the record.

One of the leading cases in Wisconsin with reference to the modification of divorce judgments with respect to alimony is *Littig v. Littig,* 229 Wis. 430, 282 N. W. 547. This case has been followed and quoted in several cases since that time. Therein the court recognized the continued claim of the wife to support from her husband notwithstanding a divorce. The following quotation is from that case (p. 437):

"Ordinarily, the amount to be allowed for the support and maintenance of a divorced wife will not be disturbed unless manifestly unjust."

From the record before us we cannot find that the order of the trial court was manifestly unjust, nor does it reflect any abuse of discretion.

*By the Court.*—Order affirmed.