HEFFERNAN, Respondent, v. HEFFERNAN, Appellant.

*March 29—April 27, 1965.*

For the appellant there was a brief and oral argument by *Walter J. Steininger* of Milwaukee.

For the respondent there was a brief by *Ruppa & Wegner*, attorneys, and *Norman W. Wegner* of counsel, all of Milwaukee, and oral argument by *Nathan Ruppa*.

BEILFUSS, J. The defendant sets forth the following contentions upon this appeal: (1) The evidence is insufficient to grant a legal separation, (2) the division of estate is inadequate, (3) permanent alimony should have been awarded, (4) the interest on the $15,000 deposited in court during the pendency of the appeal should be paid to defendant, and (5) the plaintiff should have been found in contempt of court for violation of a temporary order.

As to all of the issues raised by the defendant upon this appeal, her burden is substantial. She must either show that the findings of the trial court are against the great weight and clear preponderance of the evidence, or that the orders of the trial court constitute an abuse of judicial discretion.

*Sufficiency of the evidence.* The parties were married April 15, 1961. The action was commenced and the parties separated on or about May 4, 1963. A legal separation was requested because of religious preference.

At the time of the trial the plaintiff husband was sixty-four years old and the defendant wife fifty-four years old.

This was the first marriage for the plaintiff. He had several relatives and maintained close family ties. He had been a successful dentist for many years and had achieved some additional financial success in side business ventures and investments. His net worth was about $200,000.

At the time of the marriage the defendant had been a widow for about ten years. She had two mature children, both married. For some time prior to the marriage she had been employed as a medical assistant and was earning approximately $3,700 per year. Her assets were nominal and plaintiff had paid some of her obligations just prior to the marriage.

The courtship was for about one year. Both parties had lived in apartments. Shortly after the marriage, upon the insistence of the wife, the parties bought a $30,000 home and furnished it with expensive furnishings. The husband preferred to live in an apartment but acceded to the desires of the wife.

From the record it is readily apparent that the husband was modest and guarded in his expenditure of funds for personal convenience and comfort, and that the wife insisted upon expenditures and a standard of living deemed unnecessary and unreasonable by the husband. Their most-serious basic difference was the expenditure of money.

We can easily conclude that the parties were incompatible but incompatibility is not a ground for divorce or legal separation recognized by the Family Code in Wisconsin. The question before us is, did the conduct of the wife toward the husband amount to cruel and inhuman treatment as that term has been defined in the law of this state?

Throughout the years this court has on many occasions reviewed records wherein "cruel and inhuman treatment" was

considered.    Excerpts from a few of these cases are as follows:

*Reinhard v. Reinhard* (1897), 96 Wis. 555, 558, 71 N. W. 803:

"The effect of such conduct upon a nervous, sensitive woman can better be imagined than described, and may have seriously impaired the plaintiff's health, as found by the court. This court has repeatedly held that personal violence, whether actual or threatened, or even gross and abusive language, is not absolutely essential to constitute cruel and inhuman treatment."

*Kohl v. Kohl* (1910), 143 Wis. 214, 218, 125 N. W. 921:

"Though the ill treatment may not be said to have operated directly on the body, it however was of a nature well calculated to inflict pain and suffering in body and mind, and thus to produce injurious results which make cohabitation dangerous to the defendant's health and life and to render it wholly impracticable for him to properly discharge his marital obligations. When the treatment of either spouse by the other so affects the injured party and the marriage relation, it is cruel and inhuman treatment in the law and constitutes grounds for divorce." Accord, *Hiecke v. Hiecke* (1916), 163 Wis. 171, 157 N. W. 747.

*Banks v. Banks* (1916), 162 Wis. 87, 88, 155 N. W. 916:

"The grievous mental suffering which may be inflicted by one spouse upon the other by means of words and conduct causing wounded feelings may result in the most serious cruel and inhuman treatment and render cohabitation intolerable and unsafe and wholly prevent the discharge of the marital duties by the innocent party."

*Bird v. Bird* (1920), 171 Wis. 219, 221, 177 N. W. 4:

"Whether certain conduct is cruel and inhuman depends upon the effect it has upon the offended spouse.  Conduct

which will cause great anguish and suffering to a sensitive nature will be passed unnoticed by one of a crass disposition. The evidence which tends to establish cruel and inhuman treatment on the part of plaintiff must be considered with reference to its effect upon the defendant." See also *Moen v. Moen* (1946), 249 Wis. 169, 23 N. W. (2d) 472; *Mentzel v. Mentzel* (1958), 4 Wis. (2d) 584, 91 N. W. (2d) 101.

*Gordon v. Gordon* (1955), 270 Wis. 332, 339, 340, 71 N. W. (2d) 386:

"There is no yardstick definition for cruel and inhuman treatment. Each case depends for construction on its own peculiar circumstances. '. . . parties cannot be divorced on the ground of cruelty merely because they live unhappily together from unruly tempers or marital wranglings. Married persons must submit to the ordinary consequences of human infirmities and of unwise mating, and the misconduct which will be ground for a divorce as constituting cruelty must be serious. Mere austerity of temper, petulance of manners, rudeness of language, or even occasional sallies of passion if they do not threaten bodily harm or impairment of health, do not as a general rule amount to cruelty. . . . It is a status wherein the law operates upon the weakness as well as the strength of human nature, and it will not be dissolved except for grave and substantial causes.' . . . However, treatment which does or is well calculated to impair the health of a party, makes the marriage state intolerable and renders a party incapable of performing his or her duties in married life, satisfies the 'cruel and inhuman treatment' referred to in the statute. [Cases cited.]" Accord, *Nehls v. Nehls* (1963), 21 Wis. (2d) 231, 124 N. W. (2d) 18; *Voigt v. Voigt* (1963), 21 Wis. (2d) 421, 124 N. W. (2d) 640; *Mayhew v. Mayhew* (1942), 239 Wis. 489, 1 N. W. (2d) 184.

From these cases we conclude that no precisely described or enumerated acts of one spouse toward another can be defined as cruel and inhuman treatment. In order to constitute cruel and inhuman treatment, such as to warrant the granting of a divorce or a legal separation, the court must

consider the totality of conduct and the detrimental effect it has upon necessary marital relationships and its grave effect upon the health of the other spouse. The conduct of the offending spouse must be unreasonable and unwarranted, it must render the parties incapable of performing their marital duties, and it must have a detrimental effect upon the physical or mental health of the offended spouse. In applying these tests the court should be cognizant of the desirable public policy in maintenance of marriage and family. The court may properly consider the age of the parties, the duration of the marriage, and presence and age of the children and the probability of delinquency, and the public dependency of the parties or the children.

Applying these tests to the facts of this case, we find we have two mature, middle-aged persons who had established their own divergent habits and modes of living which will not readily accommodate to change, the marriage was of short duration, there are no children and neither party is likely to become a public charge. Over and above these considerations, was the conduct of the defendant toward the husband such as to constitute cruel and inhuman treatment? We have said it is apparent that the parties were incompatible. Did this incompatibility ripen into cruel and inhuman treatment?

We do not intend to detail the testimony, for it serves no useful purpose. The record speaks for itself. A brief and partial summary shows that the plaintiff offered testimony to support his allegations that the defendant, without justification, was unreasonably financially demanding, domineering, abusive and profane in language toward him, ridiculed him, was unappreciative and unaffectionate, reluctant to associate with his relatives, and referred to him as mentally ill. He further testified that this conduct did affect his physical and mental well-being to the extent that it was necessary to seek medical assistance. The defendant categorically denied most of his claims, explained others and professed the

marriage was happy and companionable except for minor arguments over financial matters.

Clearly this record presents a classic example of where the credibility of the witnesses and the weight of the testimony must be left to the judicious determination of the trial court. The testimony offered by either side was not inherently incredible, but as stated by the able trial judge, "One almost cannot believe one without converting the other into being a prevaricator." The trial court had as guides, imperfect as they may be, the appearance and demeanor of the witnesses in response to questions, the nature, reasonableness and probability of the testimony, their attitude and demeanor toward the court, officers of the court, the other party and witnesses, and other incidents and observations that tend to lend or detract credibility and weight in determining the truth of the matter.

We conclude the findings of the trial court are not against the great weight and clear preponderance of the evidence, that they were sufficiently corroborated, and that the findings are sufficient to constitute cruel and inhuman treatment entitling the plaintiff to a judgment of legal separation.

*Division of estate and alimony.* The testimony reveals that plaintiff had a net worth of about $200,000, and an annual income from his profession of dentistry and his investments of about $12,500. The defendant, at the time of marriage, had inherited roughly $1,750. She spent a part of this fund in preparation for the marriage and the remainder after her marriage. Just prior to the marriage the plaintiff had paid about $1,800 of defendant's obligations. Her separate estate then, if any, was nominal. At the time of her marriage she was earning $3,700 per year. She claims to have lost social-security benefits which would become payable to her by virtue of her first husband's contributions. She does not dispute that she can establish her own social-security eligibility by virtue of her own employment.

The defendant made no financial contributions to plaintiff's net worth. The parties lived together for about two years. She was paid $300 per month as temporary alimony until the granting of the judgment. She will have $18,000 in cash, or its equivalent. There is nothing to indicate she cannot resume her employment at a comparable wage. Her financial position is more secure now than it was before the marriage. She has no dependents.

Although we do not consider the award of $18,000 in lieu of alimony to be generous in view of the financial standing of the plaintiff, we do not determine it to be inadequate. There is no showing that the trial court did not consider all of the essential factors in its consideration of the division of the estate and permanent alimony. No abuse of judicial discretion on the part of the trial court appears, and the award of $18,000 as a division of the estate in lieu of alimony is approved. [1]

*Interest on funds deposited with the court.* The judgment provided that plaintiff was to pay the $15,000 in cash within thirty days. The plaintiff complied with that portion of the judgment by paying the money into court. When it became apparent that the defendant intended to appeal, the judgment was amended to provide that the defendant could occupy the home during the pendency of the appeal upon the payment of $100 per month to the plaintiff, and that $15,000 be invested with interest to accrue to the plaintiff. The temporary alimony of $300 per month was terminated when the judgment was granted. The amended judgment left the defendant in the position where she no longer received temporary alimony nor the right to occupy the home without compensating the

[1] See sec. 247.26, Stats.; *Bruhn v. Bruhn* (1928), 197 Wis. 358, 222 N. W. 242; *Caldwell v. Caldwell* (1958), 5 Wis. (2d) 146, 92 N. W. (2d) 356; *Trowbridge v. Trowbridge* (1962), 16 Wis. (2d) 176, 114 N. W. (2d) 129; *Kronforst v. Kronforst* (1963), 21 Wis. (2d) 54, 123 N. W. (2d) 528.

plaintiff. In exchange, so to speak, she was to receive the possession and use of her share of the division of the estate. Under the terms of the amendment she received neither the possession nor the use (the interest) of what has been determined to be her share. We approve of the amendment insofar as it required her to pay for the occupancy of the home and the direction to invest the $15,000, but we do, under the circumstances as related above, determine it was an abuse of discretion to provide that the accrued interest should be paid to the plaintiff. The judgment should be further amended to provide that the interest accrued on the $15,000 shall be paid to the defendant.

*Contempt of court.* Defendant contends that the plaintiff should have been found in contempt of court for failure to comply with a temporary order of the court as to the disposition of assets and timely payment of temporary alimony. There is no showing that plaintiff's failure to strictly comply with the temporary order in any way prejudiced the rights of the defendant. The failure of the trial court to find the plaintiff in contempt of court did not amount to an abuse of discretion.

*By the Court.*—Judgment as amended shall be modified to provide that interest earned on the $15,000 deposited with the clerk of court and invested in First Federal Savings & Loan Association shall be paid to the defendant and, as so modified, is affirmed. No costs to be taxed.

GORDON, J., took no part.