JACKOWICK, Respondent, v. JACKOWICK, Appellant.

*No. 270. Argued May 7, 1968.—Decided June 4, 1968.*
(Also reported in 159 N. W. 2d 54.)

For the appellant there was a brief by *Robert J. Beaudry,* attorney, and *A. Tallman Neff* of counsel, both of Milwaukee, and oral argument by *Mrs. Neff.*

For the respondent there was a brief and oral argument by *Thomas S. Sommers* of Milwaukee.

BEILFUSS, J. In oral argument the appellant-wife's main thrust was her claim of the insufficiency of the alimony and support money awards. No complaint is made as to the division of estate. She also contends that the proof was insufficient to grant a legal separation upon grounds of cruel and inhuman treatment; that any

of her acts that could be considered cruel and inhuman treatment were provoked by the husband; and that the husband practiced acts of cruel and inhuman treatment against her so as to invoke the doctrine of recrimination.

The definition of the phrase "cruel and inhuman treatment" has often been reiterated by this court. Most recently, in *Mecha v. Mecha* (1967), 36 Wis. 2d 29, 33, 152 N. W. 2d 923, the court quotes with approval from *Heffernan v. Heffernan* (1965), 27 Wis. 2d 307, 310–313, 134 N. W. 2d 439:

> "This court, in the case of *Heffernan v. Heffernan* (1965), 27 Wis. 2d 307, 310–313, 134 N. W. 2d 439, reviewed a number of cases wherein 'cruel and inhuman treatment' had been considered and after reviewing these cases concluded (p. 312):
>
> "'From these cases we conclude that no precisely described or enumerated acts of one spouse toward another can be defined as cruel and inhuman treatment. In order to constitute cruel and inhuman treatment, such as to warrant the granting of a divorce or a legal separation, the court must consider the totality of conduct and the detrimental effect it has upon necessary marital relationships and its grave effect upon the health of the other spouse. The conduct of the offending spouse must be unreasonable and unwarranted, it must render the parties incapable of performing their marital duties, and it must have a detrimental effect upon the physical or mental health of the offended spouse. In applying these tests the court should be cognizant of the desirable public policy in maintenance of marriage and family. The court may properly consider the age of the parties, the duration of the marriage, and presence and age of the children and the probability of delinquency, and the public dependency of the parties or the children.'"

Most of the testimony concerning the cruel and inhuman treatment of Mrs. Jackowick comes from the plaintiff himself. The portrait of their marriage as described by him is one of tense discord and disharmony. He testified that he and Mrs. Jackowick constantly quar-

reled and bickered over trivial matters. Often the arguing would concern the allegedly poor housekeeping of the defendant. He testified that the defendant often accused him of infidelity without cause, and at least once did so in a vulgar manner in the presence of their children. He testified that their sexual relationship was "not right" and that she had told him she did not love him and that she felt like "throwing up" when he attempted to kiss her. At one time she even persuaded their daughter to tell him that "if he did not like it, he should get out." She would belittle him in front of others; call him "cheap" and claim that he would not maintain her in the proper manner. In an attempt to humiliate him on one occasion she wore ragged shoes to a picnic and told others there that he would not buy her anything else. She called him a "freak" because he worked such long hours and told him that she would like to see him "crawling in the gutter," and that she would "break him" if it was the last thing she did. On occasions she threatened to take her own life and the lives of the children. She told him on at least one occasion that he would come home and find her hanging in the bathroom. She also threatened to kill him.

One of the items the trial court felt significant was that defendant continuously harassed the plaintiff with telephone calls while he was at work. For several years, the plaintiff testified, the defendant would call from as many as one to 10 times a day, every day. The matters she would want to discuss would be trivial matters and the calls would come when he had people in his office. If he hung up she would call back. Many times he had to leave the phone off the hook even though it was a business phone. This harassment continued right up to the time of the trial.

Mrs. Jackowick's version of the couple's marriage was somewhat different. She stated she did not want a divorce or a separation, and that she wants her husband

to come home. She did not continuously quarrel and "nag" without provocation or cause. She never accused him of being unfaithful and never told him that she did not love him, but always told him that she has always loved him. She admits that she bothered him with phone calls while he was at work, but only because he refused to communicate with her when he was home. She only made the calls in reference to things that had to be done at home and that it was only about twice a week that she made such calls. She admits she swore at him and attempted to humiliate him but that it was only when she lost her temper. Furthermore, he did the same to her. She testified that she attempted suicide on one occasion by swallowing 10 aspirin tablets but that she never threatened to kill him or the children, and did not say that she was going to hang herself in the bathroom. She did complain somewhat of his working such long hours. She was not suspicious and distrustful of him. It was her husband who "nagged" her about the housework.

The only other testimony concerning the conduct of the parties was from two witnesses who testified on the plaintiff's behalf. The first, Mrs. Patricia Affolter, who had been a neighbor and tenant of the Jackowicks, testified that she heard Mrs. Jackowick swear at Mr. Jackowick and she was aware that Mr. Jackowick complained about the ironing not being done. She further testified that she heard Mrs. Jackowick yell and scream at the children and at Mr. Jackowick. Once Mrs. Jackowick told her she was pregnant, that Mr. Jackowick was not the father of the child, and that she was able to "pick up men" in taverns. These statements were not offered for the truth of the statement but as examples of Mrs. Jackowick's attempts to humiliate Mr. Jackowick.

The other witness presented, Mr. Frank Grosser, also testified to an incident where Mrs. Jackowick began screaming at Mr. Jackowick and humiliated him by complaining about her ragged clothes.

It is apparent that testimony of the husband and wife is in conflict.

" 'The weight of the evidence and the credibility thereof were matters entirely within the province of the court as the trier of the facts.' *Gordon v. Gordon, supra* (p. 340)." *Mecha v. Mecha, supra,* page 35.

"Clearly this record presents a classic example of where the credibility of the witnesses and the weight of the testimony must be left to the judicious determination of the trial court. The testimony offered by either side was not inherently incredible, but as stated by the able trial judge, 'One almost cannot believe one without converting the other into being a prevaricator.' The trial court had as guides, imperfect as they may be, the appearance and demeanor of the witnesses in response to questions, the nature, reasonableness and probability of the testimony, their attitude and demeanor toward the court, officers of the court, the other party and witnesses, and other incidents and observations that tend to lend or detract credibility and weight in determining the truth of the matter." *Heffernan v. Heffernan, supra,* page 314.

The trial court chose to place more weight on the testimony offered by the husband. It is our firm conclusion that the finding of the trial court that Mrs. Jackowick was guilty of cruel and inhuman treatment toward her husband is not against the great weight and clear preponderance of the evidence.

Appellant contends that her constant telephoning to her husband at work was provoked by the husband because he would not speak with her at home. The telephone calls were simply one item of proof the trial court felt significant. The trial court, in its opinion from the bench, mentions the testimony regarding the husband's alleged refusal to talk with the defendant and characterizes the evidence as "hard to evaluate." The trial court noted that it is almost impossible to trace back to the beginning the reasons for the telephone calls or

the breakdown in communication between the couple. The court's finding, however, that the defendant was guilty of cruel and inhuman treatment takes into consideration not only the telephone calls but the totality of the conduct of the parties. *Heffernan v. Heffernan, supra.* Furthermore, the finding embodies a conclusion that the defendant's conduct was unreasonable and unwarranted. The defendant's contention at this level in litigation is simply a specific attack upon one item of proof and a disagreement with the weight accorded that item by the trial court in its determination that the evidence was sufficient to show the defendant was guilty of cruel and inhuman treatment. Again we say the findings of the trial court are not against the great weight and clear preponderance of the evidence.

The appellant-wife also raises the issue of recrimination.

In *Gauer v. Gauer* (1967), 34 Wis. 2d 451, 457, 149 N. W. 2d 533, we stated:

"This court subscribes to the doctrine of recrimination, holding:

" '. . . if the conduct of both parties has been such as to furnish grounds for divorce, neither of the parties is entitled to relief.' *Bahr v. Bahr* (1956), 272 Wis. 323, 325, 75 N. W. (2d) 301; *Mentzel v. Mentzel* (1958), 4 Wis. (2d) 584, 588, 91 N. W. (2d) 101."

The respondent-husband argues that the issue cannot be raised for the first time on appeal. However, in *Gauer v. Gauer, supra,* page 458, we held:

"Recrimination is an equitable doctrine and, as a consequence, is subject to invocation by the court even though not raised by the parties, and we do not foreclose ourselves from considering the defense of recrimination even though raised for the first time on appeal if the facts are apparent from the record and if to do so would not result in any unfairness to the other spouse.

It should be noted, however, that this court does not look with favor upon raising in this court an issue which has not been presented to the trial court. If the appellant has failed to present an issue, he may not raise it for the first time on appeal as a matter of right and have it considered on appeal."

In the exercise of our discretion we have determined that the doctrine of recrimination should not be considered as a defense to this action at this stage of the litigation.

A review of the record reveals that by design the appellant-wife did not offer proof in support of her counterclaim. She was the only witness in her defense to the husband's action (except as to property values) and her testimony, in the main, consisted only of denials or explanations of the husband's proof. It is apparent that the trial judge resolved the factual issues in favor of the husband and that the wife did not offer proof that would entitle her to a judgment based on cruel and inhuman treatment so as to give rise to the doctrine of recrimination. The appellant also contends that the comparative rectitude statute [1] is not available to the husband. We do not reach this issue because of our determination that the doctrine of recrimination has no application in this action.

---

[1] "247.101 **Recrimination, when applicable; comparative rectitude.** The equitable doctrine that the court shall not aid a wrongdoer is applicable to any party suing for divorce under s. 247.07 (1) to (5), except that where it appears from the evidence that both parties have been guilty of misconduct sufficiently grave to constitute cause for divorce, the court may in its discretion grant a judgment of legal separation to the party whose equities on the whole are found to be superior."

The appellant contends that comparative rectitude is not available in an action for legal separation by virtue of its omission from the statute. This notation is made for the purpose of calling this omission to the attention of the legislature for its consideration.

The appellant contends the amounts awarded for alimony and child support are inadequate. She does not, however, challenge the property division which was about one third of the estate.

After the April hearing on the cause for the separation the matter was, by stipulation of the parties, referred to the family court commissioner to take testimony and make recommendations on the questions of division of estate, alimony and support money. The record on appeal does not contain a transcript of the testimony before the family court commissioner. The commissioner did make recommendations which were accepted by the husband but not approved by the wife, primarily because of allowance of her attorney's fees. The court, at the August hearing, took additional testimony dealing mostly with property values.

The trial court ordered alimony of $200, and child support of $250 per month. A duplex residence was awarded to the wife as part of the division of the estate. She lives in one flat and receives $85 per month rent from the other. The property was given to her subject to a mortgage which requires payments of $149 per month. As part of the property settlement the husband is required to pay an additional $100 per month for seventeen months. He was also required to pay all outstanding bills with the exception of one in the amount of $220.

In 1966, the husband earned approximately $25,000 from his partnership business. (The record does not reveal what his prior earnings were.) The income tax was calculated to be about $6,500. The oldest son had graduated from high school and intended to go to college. The father had deposited $1,000 for his first year's college education and he intended to assist the other children if they wished to attend college.

The record is almost barren of testimony or other proof as to the financial needs of the wife and children to support them in their customary manner.

"It has been frequently stated by this court that the division of property in divorce cases is a matter peculiarly within the discretion of the trial court, and that its determination must prevail in the absence of some mistake or error respecting the facts upon which it rests which would amount to an abuse of discretion. . . .

". . . The amount of alimony and support money to be paid by a husband to his divorced wife is also a matter peculiarly within the discretion of the trial court." *Horel v. Horel* (1952), 260 Wis. 336, 340, 341, 50 N. W. 2d 673.

" 'Ordinarily, the amount to be allowed for the support and maintenance of a divorced wife will not be disturbed unless manifestly unjust.' " *Bradley v. Bradley* (1960), 9 Wis. 2d 523, 530, 101 N. W. 2d 628.

"As in custody, awarding child support payments is a discretionary matter. *Hansen v. Hansen* (1951), 259 Wis. 485, 49 N. W. (2d) 434.

"Again, the court's decision will not be disturbed unless against the great weight and clear preponderance of the evidence. *Bliffert v. Bliffert* (1961), 14 Wis. (2d) 316, 111 N. W. (2d) 188." *Farwell v. Farwell* (1967), 33 Wis. 2d 324, 330, 147 N. W. 2d 289.

While the child support and alimony awards do not appear to be generous, upon the record before us we cannot conclude they are manifestly unjust nor are they a result of an abuse of judicial discretion.

*By the Court.*—Judgment affirmed.

ROBERT W. HANSEN, J., took no part.