SEELANDT, Appellant, v. SEELANDT, Respondent.

*April 3—April 28, 1964.*

74

For the appellant there was a brief by *Lepp & Lepp* of Kenosha, and oral argument by *Nathaniel S. Lepp*.

For the respondent there was a brief by *Martin B. Antaramian,* attorney, and *Mittelstaed, Heide, Sheldon & Hartley* and *W. A. Sheldon* of counsel, all of Kenosha, and oral argument by *W. A. Sheldon*.

CURRIE, C. J. Plaintiff attacks the order of May 27, 1963, because it was based solely on statements by counsel for the parties and a conference between the trial judge and the minor, Laura Seelandt, of which no record was made. In view of the trial court's failure to have a record made of the first proceedings, it was error to have entered the order of May 27th. *Smith v. Smith* (1932), 209 Wis. 605, 610, 245 N. W. 644. Plaintiff, however, thereafter moved the county court to change the custody back to herself, and a hearing was held June 7, 1963, of which a complete record was made. Since the same issue was passed upon in both proceedings, we hold that the record made in the subsequent proceeding has rendered moot the issue of failure to make a proper record at the first hearing.

There still remains for disposition the issue of whether the record made in this subsequent hearing of June 7th supports the determination that custody of Laura should be awarded to the paternal grandparents rather than plaintiff. This necessitates a review of the evidence.

Prior to the June 7th hearing, both plaintiff and defendant and their counsel had agreed that the parties would consult Dr. Harold T. Schroeder, a psychiatrist and director of the Family Counseling Center of Kenosha County, Inc. A written report of Dr. Schroeder was made to Judge CARLSON and was received in evidence. Dr. Schroeder had also seen plaintiff over a period of several months at the counseling center during 1962. In addition, before making his report he had conferences with plaintiff, defendant, and Laura.

From his prior contacts with plaintiff Dr. Schroeder concluded that she "was a highly neurotic person." He found that she had great hostility toward defendant and that some of this "was seeping over into her relationship with the children, particularly Laura." Dr. Schroeder's conclusion with respect to Laura's custody was stated in his report as follows:

"I feel that Mrs. Seelandt has been quite rigid, quite strict, and certainly has not been understanding of the psychological development of this girl. I feel that she has tried to inhibit Laura's potential feminine development and has created unconsciously some fear in this girl regarding her femininity. I will not go into many of the things that Laura discussed with me only to say I feel that should Laura return to the home of the mother, I would expect a continuation of this friction and do not feel that Mrs. Seelandt will be able to properly relate to this girl on a mother-daughter basis."

Catherine Behrens, a guidance counselor at the junior high school attended by Laura, testified that she had counseled with plaintiff for two years. It was her opinion that in "some cases" plaintiff was overly protective and too overly demanding of perfection. It was her further opinion that plaintiff expected more of a fourteen-year-old child than the average fourteen-year-old child is expected to do. With respect to the custody issue, Miss Behrens testified that she thought it best if Laura had her own home away from her parents.

Ruth Walker and Marjorie Chambers, work supervisor and caseworker, respectively, of the Kenosha county welfare department, both testified that the mother was the logical person to have custody of a child of Laura's age. Miss Walker admitted, however, that, if there are emotional problems, "maybe" the daughter should not remain with the mother.

Reverend John W. Sell, assistant pastor of the church attended by plaintiff for fifteen months, testified that plaintiff regularly attended church, and that Laura attended Sunday

school and occasionally came to church with plaintiff. It was his opinion that plaintiff is morally good and shows concern for her children. He stated that at times plaintiff was overly concerned about Laura but that this is not abnormal in a mother.

Plaintiff testified in her own behalf. She recounted instances of disagreement which had arisen between Laura and herself when plaintiff had rightly restricted Laura's activities or enforced discipline. The impression created by plaintiff's testimony was that plaintiff had not been overly restrictive in her treatment of Laura and that Laura is the type of youngster who requires parental discipline.

We quote from the trial court's memorandum decision rendered at the conclusion of the June 7th hearing as follows:

"The law very wisely provides that a child who has reached the age of fourteen has the right to express her desire as to where and with whom she desires to live, and that is to be given consideration by the Court. If the child gives good reasons for such preference the Court should give that reasoning respect. This girl in the opinion of the Court is entitled to a lot of respect in her expression of preference. The Court conferred with her, and she disclosed to this Court that she is a highly intelligent child. She has a realization of her moral obligations and that she has aims and a realization of her responsibilities in life and that she has a determination to carry them out regardless of where she lives, but she disclosed to the Court that because of the feeling that has arisen between her and her mother she cannot tolerate life with her or live close to her from day to day any longer and that it interferes with her work and disturbs her so that she cannot do her work properly, and that is why she desires to live elsewhere. She realizes that she has to do good work in school. She told me that she realized that she must keep good company. She realizes that she must, even though not living with her mother, visit her frequently and keep up that relationship, and that it is an important family relationship, but she stated that she cannot

bear being forced to live the cramped life which she described to me.

". . . In the present hearing the letter of Doctor Schroeder and the testimony of Miss Behrens, the child's counselor at school, as well as the other evidence presented, reaffirms the conclusion which the Court arrived at in the former hearing that this child, in consideration of her own best interest, should be placed elsewhere than in the custody of her mother. The best interest of this gifted child in the Court's opinion will be best served by freeing her from the shackling effect of the mother's neurosis, hostility and rigidity by placing her in the custody of her paternal grandparents so that there will be no interruption of her school progress, her friendships, her opportunity to visit with her mother and brothers, her father, and her maternal grandparents.

"The Court is of the opinion that this girl has arrived at an age where she needs some freedom in her association with good companions and needs some recognition of having intelligence rather than being hampered and clamped by overtight supervision.

"I believe that the letter of Doctor Schroeder when considered with the girl's expressed anxiety, and also the opinion of Miss Behrens, establishes without any contradiction in the record that *the girl's best interest will be served by placing her custody in the relatively neutral parental [paternal] grandparents so that this developing child can find her fullest expression.*" (Emphasis supplied.)

Where a trial court, as here, makes no formal findings of fact but its memorandum decision makes an analysis of the facts, the decision is accorded the consideration and weight of formal findings. *Gumz v. Chickering* (1963), 19 Wis. (2d) 625, 636, 121 N. W. (2d) 279; *L. Rosenheimer Malt & Grain Co. v. Kewaskum* (1957), 1 Wis. (2d) 558, 560, 85 N. W. (2d) 336; *Will of Daniels* (1937), 225 Wis. 502, 510, 274 N. W. 435.

The trial court's finding that the best interests of Laura will be promoted by placing her custody in the paternal grandparents is not against the great weight and clear pre-

ponderance of the evidence. There is no other factor present which would cause this court to conclude that the trial court abused its discretion in placing custody in such grandparents.

Laura lacked only three weeks of being fifteen years old at the time of the June 7th hearing. The trial court properly gave weight and consideration to the wishes and desires of Laura as related in the informal conference with her. Mr. Chief Justice ROSENBERRY stated in *Jones v. State ex rel. Falligant* (1933), 211 Wis. 9, 17, 247 N. W. 445:

> "However, the time is not far distant when this girl or young woman will take charge of her own life, whatever the decision of this court may be. It would seem proper and just to give some consideration and weight to her wishes and desires in the matter.
>
> "Our statutes (sec. 319.01) provide that a minor over fourteen years of age may nominate his own guardian, who if approved by the Court shall be appointed. Courts ordinarily give much consideration in cases where guardians are to be appointed to the wishes of children."

In *Edwards v. Edwards* (1955), 270 Wis. 48, 56b, 70 N. W. (2d) 22, 71 N. W. (2d) 366, however, this court cautioned that the personal preference of the child should not be deemed to be controlling on the issue of custody unless the child gives substantial reasons why it would be against his or her best interests to award custody contrary to such expressed preference. It would appear from the aforequoted portion of the trial court's memorandum decision that Laura did advance substantial reasons why it would be against her best interest for her to remain in the custody of plaintiff.

While we commend the trial court for having so conferred with Laura to discuss the custody issue with her in order to obtain her preference with respect thereto and her substantiating reasons for such preference, we would prefer that the record on appeal disclosed what transpired at this conference. We suggest two possible ways of securing such record. One

would be to have the reporter in chambers during the conference and have him record what there transpired under instructions not to transcribe his shorthand notes nor file the transcript thereof unless an appeal is taken. The second would be to have the trial judge dictate into the record the gist of what the child told him in conference.

Plaintiff advances the further contention that the trial court under the provisions of sec. 247.24, Stats.,[1] could not award custody to the grandparents without making a specific finding that plaintiff is unfit. The record establishes without dispute that plaintiff is a. woman of good morals. The statutory words "fit and proper" have usually been interpreted in the past decisions of this court as connoting moral fitness. One exception is *Hellermann v. Hellermann* (1946), 249 Wis. 190, 23 N. W. (2d) 408. There the court was concerned with whether the divorced mother possessed the mental and emotional stability to permit custody of two minor children to be awarded her. Implicit in the decision in that case was the assumption, that if she lacked such mental or emotional stability, she would not be a fit person to be awarded custody within the provisions of sec. 247.24.

The welfare of the child is the controlling consideration. *Greenlee v. Greenlee* (1964), 23 Wis. (2d) 669, 127 N. W.

---

[1] This statute provides in part as follows:

"In rendering a judgment of annulment, divorce or legal separation, the court may make such further provisions therein as it deems just and reasonable concerning the care, custody, maintenance and education of the minor children of the parties, and give the care and custody of the children of such marriage to one of the parties to the action, or may, if the interest of any such child demands it, and if the court finds either that the parents are unable to adequately care for any such child or are not *fit and proper* persons to have the care and custody thereof, may declare such child a dependent and give the care and custody of such child to a relative (as defined in ch. 48) of the child, a county agency specified in s. 48.56 (1), a licensed child welfare agency, or the state department of public welfare." (Italics supplied.)

(2d) 737. This being so, an emotional disturbance of a parent which makes it harmful to the welfare of a minor child to continue custody in such parent, should constitute unfitness within the meaning of this statute. We so hold. Cf. *Combs v. Combs* (1958), 162 Cal. App. (2d) 33, 327 Pac. (2d) 164.

We conclude that there was full compliance with the statute when the trial court found in its memorandum decision that plaintiff's neurosis had a harmful effect on Laura which should be removed by the change of custody to the paternal grandparents.

*By the Court.*—Orders affirmed.