BELISLE, by Guardian *ad litem*, Appellant, v. BELISLE, Respondent.

*March 29—April 27, 1965.*

For the appellant there was a brief and oral argument by *Charles R. Ellefsen* of Hudson.

For the respondent there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar.*

WILKIE, J.    Three issues are raised on this appeal. They are:

1. Since no testimony was taken at the hearing on April 20, 1961, was there error in entering the order of July 17, 1961, in which custody was transferred from the appellant to the paternal grandmother?

2. Was it error following the 1963 and 1964 custody hearings to continue custody in the paternal grandmother without a specific finding that appellant "was unfit?"

3. Is the trial court's decision of May 14, 1964, against the great weight and clear preponderance of the evidence?

Appellant's attack on the July 17, 1961, order amounts to an appeal from that order and must fail since the time for appeal has clearly lapsed. Even assuming the appeal to be timely, the question of whether the lack of a record is fatal to the validity of the order is rendered moot because proper records were made of the two subsequent hearings on the same issue. [1]

Appellant contends that it was error for the trial court, after the 1963 and 1964 hearings, to continue custody in someone other than a parent without a finding that appellant was unfit, pursuant to sec. 247.24, Stats. [2] The decision of the court after the original custody hearing in 1961 was that "the temperment [sic] of the Mother is such that the Court feels that she is not a good person to have the custody of this child." At the contempt hearing later in 1961, the judge specifically stated that, "This court is of the opinion [that appellant's] . . . home is a unfit home." After the hearing on July 24, 1963, the judge stated that "When this matter was up before the court nearly two years ago the court made a finding that neither the plaintiff or the defendant was the proper person to have custody of the child. . . ." The judge added that no testimony was introduced which "would warrant changing the custody." In its decision after the latest hearing the court opined that appellant was "still emotionally unstable." So while the trial court did not expressly find appellant "unfit" in its decision relating to the order involved on this appeal, a review of all proceedings in this case leaves no doubt that this is what was meant. At any rate, this court has held that a finding of "an emotional disturbance of a parent which makes it harmful to the welfare of a minor child

---

[1] *Seelandt v. Seelandt* (1964), 24 Wis. (2d) 73, 128 N. W. (2d) 66.

[2] See also *Bohn v. Bohn* (1962), 16 Wis. (2d) 258, 114 N. W. (2d) 423.

to continue custody in such parent" is tantamount to a finding of unfitness within the meaning of sec. 247.24, Stats.[3]

Appellant next contends that the finding that she is unfit is against the great weight and clear preponderance of the evidence. What proof is there in the record of appellant's "emotional instability?" The original switch in custody in 1961 was prompted by the stabbing incident. In November of 1962 appellant traded blows with a girl in a local tavern. There was a similar misunderstanding with another girl in the spring of 1963. On the eve of the New Year, 1964, she became involved in another altercation which started in a restaurant-bar owned by her third husband's parents and continued outside in the street.

At the latest hearing other evidence established that at the time she was twenty-two, was married to William Leske who tended bar at his parents' restaurant-tavern, and was making $175 per month as a bookkeeper-secretary in a restaurant although she planned to quit soon because of pregnancy, that she attended church regularly, and that she and her husband live in an apartment with her child from her second marriage. There was testimony to the effect that she was an excellent housekeeper, that she was very neat in personal appearance, that she was a good mother to her daughter.

Thus, it is true that things are different in 1964 from what they were in early 1961. Appellant is no longer in jail where she was when the custody of Daniel was awarded to Mrs. Belisle. She has a home of her own and has remarried. She has the custody of her daughter by her second marriage. But while these changes have occurred the record clearly supports the trial court's finding that she is still emotionally unstable.

Custody matters are highly discretionary and the rule is well established that the trial court's determination will not

---

[3] *Seelandt v. Seelandt, supra,* footnote 1, at page 82.

be upset in the absence of a clear abuse of discretion.[4] Although each case must be considered in light of all the particular facts and circumstances,[5] guidelines have been established to aid the trial court in its decision. True, other things being equal, preference will ordinarily be given to the mother if she is not unfit.[6] This is not a rule of law, but merely an important element to be considered;[7] the crucial and controlling factor is the welfare of the child.[8]

Since the welfare of the child is paramount the court could properly consider that no evidence was adduced at the hearing to show that Daniel's placement at the home of Mrs. Belisle was working against his welfare. While appellant urges that Mrs. Belisle was forty-seven years old at the time of the 1964 hearing and that there is an age gap of about nine years between Daniel and Mrs. Belisle's son, the only other child in the home, the mere existence of these age differentials without proof that Daniel is somehow adversely affected does not demonstrate that a change of environment is necessary.

Appellant also contends that because she has been deemed fit to have custody of the daughter born of the Hopkins marriage, she should be deemed fit to have custody of Daniel. The daughter's custody is pursuant to a decree of the county court in St. Croix county, and presumably there has been no dispute over the custody of that child. Furthermore, many of the events considered by the court in the present case on the matter of custody of Daniel could not have occurred at the time of the St. Croix divorce and custody decree. Clearly,

---

[4] *Bohn v. Bohn, supra,* footnote 2; *Smith v. Smith* (1957), 1 Wis. (2d) 174, 83 N. W. (2d) 672.

[5] *Graichen v. Graichen* (1963), 20 Wis. (2d) 200, 121 N. W. (2d) 737; *Dodge v. Dodge* (1955), 268 Wis. 441, 67 N. W. (2d) 878.

[6] *Acheson v. Acheson* (1940), 235 Wis. 610, 294 N. W. 6.

[7] *Welker v. Welker* (1964), 24 Wis. (2d) 570, 129 N. W. (2d) 134.

[8] *Welker v. Welker, ibid.; Seelandt v. Seelandt, supra,* footnote 1; *Greenlee v. Greenlee* (1964), 23 Wis. (2d) 669, 127 N. W. (2d) 737.

the St. Croix county court has not had the opportunity to pass on the same issue as was adjudicated here by the Polk county court.

In essence, the trial court was shown nothing to indicate that the present custody arrangement is harmful to Daniel. It was convinced and we think properly so that the mother's emotional instability has continued and that for the best interests of Daniel, custody should remain where it is in the paternal grandmother.

*By the Court.*—Order affirmed.

BEILFUSS, J., took no part.