HEITING, Respondent, v. HEITING, Appellant.

*No. 90. Submitted under sec. (Rule) 251.54 May 8, 1974.— Decided June 4, 1974.*
(Also reported in 218 N. W. 2d 334.)

112

114

The cause was submitted for the appellant on the brief of *Cannon, McLaughlin, Herbon & Staudenmaier,* attorneys, and *L. William Staudenmaier* of counsel, all of Milwaukee, and for the respondent on the brief of *William W. Ward* of West Allis.

BEILFUSS, J. The defendant-appellant husband asserts several issues:

1. Was there sufficient credible evidence to support a finding of cruel and inhuman treatment?

2. Was it error to award the minor child to the respondent-wife and should this court remand the case for a new hearing on custody?

3. Was the award of support money excessive?

4. Did the court err in the division of property?

5. Did the court err in ordering the appellant-husband to contribute to the respondent-wife's appeal costs?

Appellant contends that the evidence is insufficient to support the trial court's finding that he has been guilty of a course of cruel and inhuman treatment of and towards the respondent.

In *Jackowick v. Jackowick* (1968), 39 Wis. 2d 249, 252, 159 N. W. 2d 54, we stated:

"The definition of the phrase 'cruel and inhuman treatment' has often been reiterated by this court. Most recently, in *Mecha v. Mecha* (1967), 36 Wis. 2d 29, 33, 152 N. W. 2d 923, the court quotes with approval from *Heffernan v. Heffernan* (1965), 27 Wis. 2d 307, 310–313, 134 N. W. 2d 439:

" 'This court, in the case of *Heffernan v. Heffernan* (1965), 27 Wis. 2d 307, 310–313, 134 N. W. 2d 439, reviewed a number of cases wherein "cruel and inhuman treatment" had been considered and after reviewing these cases concluded (p. 312):

" ' "From these cases we conclude that no precisely described or enumerated acts of one spouse toward another can be defined as cruel and inhuman treatment. In order to constitute cruel and inhuman treatment, such as to warrant the granting of a divorce or a legal separation, the court must consider the totality of conduct and the detrimental effect it has upon necessary marital relationships and its grave effect upon the health of the other spouse. The conduct of the offending spouse must be unreasonable and unwarranted, it must render the parties incapable of performing their marital duties, and it must have a detrimental effect upon the physical or mental health of the offended spouse. In applying these tests the court should be cognizant of the desirable public

policy in maintenance of marriage and family. The court may properly consider the age of the parties, the duration of the marriage, and presence and age of the children and the probability of delinquency, and the public dependency of the parties or the children." ' "

The trial court made the following findings as to the cruel and inhuman treatment:

"*Ninth:* That the defendant has been guilty of a course of cruel and inhuman treatment of and towards the plaintiff in the manner following:

"(a) That the defendant was cold and indifferent in his attitude, demeanor, and disposition towards the plaintiff; that he showed her little love or no love or affection, never kissed her, nor did he embrace her or call her any endearing names.

"(b) That the defendant did not remember or make mention of the 1970 anniversary date of the marriage.

"(c) That the defendant did absent himself from the home of the parties often and regularly.

"(d) That the defendant failed to take the plaintiff to places of amusement or otherwise provide for her diversion.

"(e) That the defendant refused to assist the plaintiff or investigate the condition of her health when found upon the bathroom floor.

"*Tenth:* That such treatment of the plaintiff by the defendant has made the plaintiff sick and nervous which required the attendance of a physician for treatment of ulcers, and that such detrimental effect upon the plaintiff's health and well being have been corroborated."

The standard of review has been stated as follows: ·

"It is settled law that the findings of fact of a trial court on appeal from a divorce judgment must be affirmed unless contrary to the great weight and clear preponderance of the evidence. *Merten v. National Manufacturers Bank* (1965), 26 Wis. (2d) 181, 186, 131 N. W. (2d) 868. Moreover, great weight is placed upon the discretion of the trial judge. We have stated:

" 'In divorce cases great and almost controlling weight is given to the decision of the trial judge. He has the

parties and witnesses before him. In many, if not in most cases, he has some knowledge of the situation or can easily inform himself in regard to it, and is in a better position to pass upon the rights of the parties than is an appellate court.' *Rohloff v. Rohloff* (1943), 244 Wis. 153, 158, 11 N. W. (2d) 507." *Gauer v. Gauer* (1967), 34 Wis. 2d 451, 454, 149 N. W. 2d 533.

While the grounds for divorce must be uniform in the various courts throughout the state, we nevertheless rely heavily upon the trial judge's findings. The same unwarranted and unreasonable conduct can cause varying reactions in different persons. The same conduct can cause grave physical or mental distress in one person and not another. This result, however, cannot be judicially accepted based only upon unreasonable subjective symptoms or testimony but must be supported by some objective manifestation of physical or mental distress. In making these rather delicate determinations as well as a proper evaluation of the testimony and the demeanor of the parties and other witnesses as to the grounds for divorce, the trial judge, by his face-to-face observations, is in a much superior position to make the findings and conclusions than the members of an appellate court who depend solely upon an impersonal record.

We do not intend to restate the evidence. We have reviewed the record and find the evidence, although minimal, sufficient to sustain the findings of fact set forth above. It is apparent from the trial court's statements which appear in the record that it believed that the facts of this case went beyond mere incompatibility. We agree that the disregard, complete indifference, hostility and lack of affection, marital relations and family associations over a period of almost three years did go beyond mere incompatibility and resulted in an intolerable family and marital existence. This condition did mentally and physically affect the plaintiff-wife to the extent that she

became nervous, developed ulcers and needed medical services.

An evidentiary problem arose concerning the competency of the plaintiff-wife to testify as to her physical problems and mental distress. A party to a divorce action can testify as to his or her medical history, his or her own objective and subjective symptoms and the medical treatments received. The issue is not the precise mental or physical condition but whether he or she does have mental or physical distress attributed to the conduct of the other spouse. Expert medical evidence is, of course, preferable and in some cases perhaps necessary, but the party is competent to testify as to these conditions. Likewise, close relatives or associates can testify as to personal observations of objective symptoms; however, they should not be permitted to give medical opinions as to the nature of an ailment nor its cause. In this case the evidence is sufficient to permit the trial court to find the conduct of the husband had a grave effect upon the health of the wife.

The appellant-husband contends the court erred in awarding the custody of the minor child to the mother. Challenges to custody orders are usually characterized as an abuse of judicial discretion. However, where it is claimed the trial court applied the wrong rule of law it can be error. Here we find no error of law on the part of the trial court and the challenge, if any, must be upon a basis of an abuse of discretion.

The child, Cynthia, was eleven years old at the time of trial. She was a healthy, normal and quite well-adjusted child who apparently had great affection for both her mother and father. Without question, both the father and mother are fit parents, love the child and can adequately provide for her. The trial court examined and evaluated the facts and found that because of the defendant's habits and custom in spending several hours a week on his out-

side interests, laudable as they may be, the best interest of the child required that the custody be awarded to the mother.

The department of family conciliation recommended that the custody be awarded to the mother. The guardian *ad litem* recommended custody to the father. The guardian *ad litem* had made commendable and extensive efforts to effect a reconciliation between the husband and wife. The husband was willing to make an effort to reconcile but the wife was not. In his report to the court the guardian *ad litem* recommended the divorce be denied and in the event the divorce was granted that custody be awarded to the father. The guardian *ad litem's* reason for the custody recommendation was that he thought if the child was awarded to the father the mother would then effect a reconciliation and resume their marital status because of her desire to be with the child. The trial court rejected this reasoning and rightfully so. It is hard to believe that such use of a minor child could be in the best interest of the child.

In evaluating the discretion of trial courts in custody matters, this court has said:

"This court is firmly committed to the principle that the findings of fact and orders of the trial court concerning the custody of minor children in divorce actions will not be set aside or reversed unless clearly against the great weight and clear preponderance of the evidence, or unless there is a clear abuse of discretion.

" 'Custody matters are highly discretionary and the rule is well established that the trial court's determination will not be upset in the absence of a clear abuse of discretion.' *Belisle v. Belisle* (1965), 27 Wis. (2d) 317, 321, 322, 134 N. W. (2d) 491.

" ' 'As has been repeatedly held by this court, the matter of the custody of children in divorce actions is a matter peculiarly within the jurisdiction of the trial court, who has seen the parties, had an opportunity to observe their conduct, and is in much better position to determine

where the best interests of the child lie than is an appellate court.' *Adams v. Adams* (1922), 178 Wis. 522, 525, 190 N. W. 359; *Hamachek v. Hamachek* (1955), 270 Wis. 194, 202, 70 N. W. (2d) 595.

" . . .

"In *Hamachek v. Hamachek, supra,* at pages 198, 199, speaking through Mr. Chief Justice FAIRCHILD, we stated:

" 'The welfare of the child is, of course, the prime consideration of a court in granting or changing the custody of any child. *Acheson v. Acheson,* 235 Wis. 610, 294 N. W. 6. The law involved here is that whenever the welfare of any child will be promoted thereby, the court granting the decree of divorce "shall always have the power to change the care and custody of any such child, either by giving it to or taking it from such parent or other person or such institution, provided that no order changing the custody of any child shall be entered until after notice of such application shall have been given." . . .' " *Larson v. Larson* (1966), 30 Wis. 2d 291, 296, 297, 140 N. W. 2d 230.

In our review, given the facts of this case and applying the rules set forth, we find no abuse of discretion and approve of the trial court's custody order.

The appellant also requests we remand the matter for another full hearing on the custody question. We decline to do so. The order for custody as made is approved. If there is any significant change in circumstances the plaintiff may apply for a change in custody at any time under the statutory procedures provided in ch. 247, Stats.

The appellant contends the support money award of $217 to the plaintiff for the minor child is excessive and should be set aside. His argument is predicated upon the plaintiff's sworn statement that her cost to feed and clothe the child was approximately $145 per month. This estimate was based upon the circumstances at the time the statement was given. After the commencement of the divorce the parties and the child continued to reside in the home of the parties. The house has four bedrooms and the testimony reveals the husband used one bedroom

and the wife and daughter another. The mother and daughter prepared their meals and ate together. The husband prepared and ate his meals alone. The parties did converse with the child but not with each other. Cohabitation after the commencement of a divorce action is usually not approved and if marital sexual relations are indulged in it is a basis for a dismissal of the action. In this case, however, there is no evidence to suggest that such actions transpired. Because of this unusual arrangement, the cost of food and clothing alone does not reflect the entire cost of the reasonable maintenance of the child. Maintenance of the wife and child in separate housing and other necessary incidentals in connection therewith necessarily increase the costs of supporting the child. In reviewing this matter it is also significant to note that alimony was not awarded to the wife. The amount of support money, unless demonstrably incorrect, unreasonable or beyond the reasonable capabilities of the party required to provide support money, will not be disturbed upon appeal. We approve the support money awarded. It, too, is subject to continuing jurisdiction by the trial court and to change based upon the circumstances as they then appear.

The appellant-husband also challenges the division of estate. He characterizes it as error—again we view this issue as one of claimed abuse of discretion. The trial court's order for the division of estate will not be upset except upon a clear showing of abuse of discretion.

A great many of the circumstances of the individual case as shown by the evidence are material in making a suitable and proper division of estate in divorce cases.

In *Lacey v. Lacey* (1970), 45 Wis. 2d 378, 383, 384, 173 N. W. 2d 142, we stated:

". . . Whatever is material and relevant in establishing a fair and equitable basis for division of the property of the parties may be considered. Such relevant factors certainly include the length of the marriage, the age and

health of the parties, their ability to support themselves, liability for debts or support of children, general circumstances, including grievous misconduct, although a division is not a penalty imposed for fault. Whether the property award is in lieu of or in addition to alimony payments is a material factor. Whether the property was acquired during the marriage or brought to the marriage makes a difference. . . ."

In this case the division of estate was in lieu of alimony.

The facts reveal that at the time of the granting of the divorce both parties were supporting themselves. She was earning take-home compensation of about $500. His was about $800. However, he was thirty-four years old, a graduate engineer working for a large successful company whose policy had been toward annual salary increases. It was probable that his net earnings would increase considerably over the years. She was thirty-three years of age, employed as a secretary-receptionist. Her prospect of substantial salary increases is much less probable than the husband's.

At the time of the marriage neither party had any substantial assets and all of the property was acquired after marriage. The wife worked for several years during the marriage and contributed her earnings to the support of the family and the acquisition of the property.

In 1968 the parties purchased a four bedroom home. The purchase price was about $29,000. A $2,000 down payment was made and the balance secured by a mortgage. The husband concedes the major part of the down payment came from the earnings of the wife. At the time of trial the house was worth about $34,000 and the amount owing on the mortgage was approximately $25,000. The court ordered the house sold and the net proceeds divided equally.

The wife testified the household furnishings were worth $6,000 and they were all awarded to her.

There were two automobiles of apparently equal value. One was awarded to each party.

Each party had life insurance on his own life. Each was ordered to designate Cynthia a beneficiary and keep the policies in force until Cynthia becomes twenty-three years of age.

The wife had accumulated $1,400 in currency and kept it in a safety-deposit box. From these funds she was ordered to pay a small mortgage on the car awarded to her.

All other moneys were to be divided equally. Each party was to pay one half of the guardian *ad litem* fee fixed at a total of $450 and each was to pay his own attorney fees and costs.

The husband's principal complaint is that the wife was awarded all the household furniture, a substantial part of their assets. Because of the duration of the marriage, the financial contributions of the wife, no provision for alimony and prospective earning capabilities of the parties, we deem this division to be reasonable and equitable. In any event it cannot be considered to be an abuse of discretion.

After the notice of appeal the plaintiff-respondent wife asked for an allowance of $1,000 for her appeal costs. The court ordered the appellant-husband to pay her $800. We do not believe this to be a frivolous appeal on the part of the husband. The wife does have sufficient funds, assets and earning ability to afford a substantial part of her appeal costs and she should meet these obligations.[1] Under these circumstances we do not award the costs she would normally be entitled to upon the affirmance of

[1] *See Molloy v. Molloy* (1970), 46 Wis. 2d 682, 176 N. W. 2d 292.

the judgment and direct the order awarding her $800 for appeal costs be amended to provide $500 for that purpose.

*By the Court.*—Judgment affirmed; order amended and, as amended, affirmed. No costs to be taxed.