SCOLMAN (Robert C.), Appellant, v. SCOLMAN (Connie), Respondent.

*No. 257. Argued January 3, 1975.—Decided March 4, 1975.*
(Also reported in 226 N. W. 2d 388.)

For the appellant there was a brief by *Patrick T. McMahon* and *McMahon & Moroney,* attorneys, and *Dennis P. Moroney* of counsel, all of Milwaukee, and oral argument by *Patrick T. McMahon.*

For the respondent there were briefs by *Jordan B. Reich* and *Robert G. LeBell,* both of the Legal Aid Society of Milwaukee, and oral argument by *Mr. LeBell.*

WILKIE, C. J.   This is a divorce case.  The sole issue on appeal is whether the trial court applied an incorrect standard in awarding the custody of the parties' four-year-old son, now six and one-half, to the defendant-respondent mother rather than the plaintiff-appellant father.[1]  We conclude that the trial court did err in this respect, in according an arbitrary preference to the wife,

---

[1] The child was born on June 7, 1968, and was four years old at the time the judgment was entered in 1972.

contrary to Wisconsin law and to the specific provisions of sec. 247.24 (3), Stats. We therefore reverse the judgment and remand for further proceedings on the question of custody of the child.

Robert Scolman commenced a divorce action against his wife, Connie, on the grounds of cruel and inhuman treatment. Mrs. Scolman counterclaimed, asking for a divorce on the same grounds. The husband was awarded temporary custody of the couple's then three-year-old son, John. After trial, the trial court dismissed plaintiff's complaint and granted the divorce on the wife's counterclaim. Although both the family court marriage counselor and the guardian *ad litem* recommended that the father retain custody, custody of John was nevertheless awarded to the wife. Presumably the custody was then transferred and John remains with the mother to this day. The husband appeals from the judgment awarding custody of John to the wife.

Great deference is accorded trial court decisions in child custody cases. Where the trial court finds that the best interests of the child are better served by awarding custody to one parent rather than the other, the award will not be upset unless it is against the great weight and clear preponderance of the evidence or unless it represents a clear abuse of discretion.[2]

In addition, as the court said in *Heiting v. Heiting:* [3]

". . . Challenges to custody orders are usually characterized as an abuse of judicial discretion. However, where it is claimed the trial court applied the wrong rule of law it can be error."

Although the husband challenges the trial court's decision on both of these grounds, only the latter ground need

---

[2] *Heiting v. Heiting* (1974), 64 Wis. 2d 110, 119, 120, 218 N. W. 2d 334.

[3] *Id.* at page 118.

be considered here because the trial court made its award on the basis of an incorrect view of the law and gave an undue preference to the wife. We have stated many times that "other things being equal, preference will ordinarily be given to the mother if she is not unfit." [4] Here there is no question that the trial court found both of the parties fit. However, the preference for the mother is not a rule of law but is only an important element to be considered. The crucial and controlling factor is the welfare of the child. [5]

A review of the record here clearly indicates that the trial court transformed a slight preference for the mother into an almost irrebuttable presumption in favor of the mother.

At the time the hearings were concluded on the question of custody, the mother, aged twenty-five, had commenced employment at the E-Z Paintr, working first on the late afternoon and evening shift and finally on the day shift from 7 a. m. to 3:30 p. m. She stated that, if awarded custody, a woman down the street with two children of her own would take care of John while she was working. She indicated that she wanted to move and, if possible, quit her job. In any event, she said she would secure a baby-sitter beforehand or else she would not move.

At the time of the custody hearings, the father, aged thirty-one, was working at Briggs & Stratton in Milwaukee as a pipefitter on the night shift from 11 p. m. to 7:30 a. m. The father stated that his own mother had moved in and would help out with the small boy. During the day he would take him to his prekindergarten Montes-

---

[4] *Belisle v. Belisle* (1965), 27 Wis. 2d 317, 322, 134 N. W. 2d 491.

[5] *Id.* at page 322. *See also: Welker v. Welker* (1964), 24 Wis. 2d 570, 129 N. W. 2d 134; *Seelandt v. Seelandt* (1964), 24 Wis. 2d 73, 128 N. W. 2d 66; *Greenlee v. Greenlee* (1964), 23 Wis. 2d 669, 127 N. W. 2d 737.

sori school. He would then pick the child up after his half day at school and be with him until the child's bedtime at 7:30. Although the father said he earned $10,000 after taxes in 1972, or approximately $830 per month after taxes, with monthly expenses listed in the record of less than $600 [6] as against these earnings, the trial court concluded that the father's plan for the child was financially unrealistic. "Pie-in-the-sky" was the trial court's summation.

As indicated, both the guardian *ad litem* and the family court marriage counselor recommended custody to be awarded to the father. The court praised the reports but rejected them because of his belief that, no matter how good a parent the father would be, the mother takes precedence if she is also fit. In rejecting the reports, the court explained:

"Now, taking that in proper perspective, the sociological impact is to give the child to the mother. That is how simple this case resolves itself. In spite of the tremendous effort put forth by the guardian ad litem, and the excellent report of Mr. Adamak, the mother is the natural and normal custodian."

"And, again, the recommendation of the guardian ad litem was not taken lightly, Mr. Shapiro, the good lawyer that he is, and the requirements of the law, I think, were fulfilled. There was a full and complete, comprehensive investigation, recommendation, both from the Department as well as from the guardian ad litem, but the Court differs with the conclusions of both because the court feels that the sociological impact of the mother's care, of a mother's interest in a four year old child overcome the other considerations both Mr. Shapiro and Mr. Adamak used in arriving at the conclusions."

---

[6] The expenses listed in the record are as follows: $268 per month rent, plus heat for the house; $25 per week or approximately $110 per month for a baby-sitter; $75 per month tuition at the Montessori school; $108 per month support and alimony payments to the mother.

The court also indicated that by nature a father is incapable of substituting for a mother:

". . . The child needs care, maintenance, and discipline. When the child is sick and running a fever, he needs the mother along side of him. You are not there. You will not be there and you cannot substitute for the mother of a child, the natural feeling."

". . . don't let anybody else, some well meaning housekeeper, going to do for the child what the natural mother should do. You know that isn't possible, Mr. Scolman. I don't care how well intentioned a mother still has the roll of being parent, patient, compassionate, humane with the child. Raising of a child is a skill in and of itself and to be honest with you, in this day of women's lib, I don't think men are built for that. I think it is primarily a women's responsibility to raise the child."

The husband-father relies on sec. 247.24 (3), Stats., which was adopted in 1971 and states:

"(3) In determining the parent with whom a child shall remain, the court shall consider all facts in the best interest of the child and shall not prefer one parent over the other solely on the basis of the sex of the parent."

We conclude that sec. 247.24 (3), Stats., does not strike down the holdings of this court indicating that, other things being equal, there is usually a preference for the mother. The trial court may properly find that young children are better off with their mother. The statute merely decrees what the law in Wisconsin is already, that the trial court's decision cannot solely be based on the sex of the parent. Our interpretation of sec. 247.24 (3) is consistent with the interpretation placed on the identical language in a Minnesota statute by the Minnesota Supreme Court in three recent cases. In *Petersen v. Petersen* [7] and *Ryg v. Kerkow* [8] the Minnesota court in-

---

[7] (1973), 296 Minn. 147, 206 N. W. 2d 658 (custody awarded to mother).

[8] (1973), 296 Minn. 265, 266, 207 N. W. 2d 701 (custody awarded to mother).

dicated that sec. 518.17, Minn. Stats., was not inconsistent with the rule that, other things being equal, custody should be awarded to the mother. The court emphasized in each case, however, that the paramount issue in custody cases is what is in the best interests of the child. In the very recent case of *Erickson v. Erickson,*[9] the court indicated that the statute means that the trial court should not give the mother an "absolute or arbitrary preference" on the basis of her sex.

Sec. 247.24 (3), Stats., makes it clear that sex alone cannot be used as the sole basis for making a custody award. The preference to be given to a mother in the award of custody of a minor child is only one element to be considered. The determination must be entirely on the basis of what is in the best interests of the child.[10] We are not satisfied that the trial court gave enough detailed consideration to the question of what was in the best interests of John.

If the trial court concludes that the custody should be awarded to the mother because it feels that a young child should be with his mother, the decision must be based on precise findings that such placement is in the best interests of the child. It must find that awarding custody to this particular mother because of her particular personal qualities is better for the child than awarding custody to this particular father. The trial court's decision cannot solely be based on the sex of the parent. The court must make a personal evaluation of this mother's qualities and weigh them against those of this father. In the early case of *Jenkins v. Jenkins*[11] the custody of a three-year-old boy was involved and this court stated what has been repeated with approval many times:[12]

---

[9] (Minn. 1974), 220 N. W. 2d 487.

[10] *Kritzik v. Kritzik* (1963), 21 Wis. 2d 442, 124 N. W. 2d 581.

[11] (1921), 173 Wis. 592, 181 N. W. 826.

[12] *See, e.g., Welker v. Welker* (1964), 24 Wis. 2d 570, 578, 129 N. W. 2d 134; *Peterson v. Peterson* (1961), 13 Wis. 2d 26, 30, 108

". . . For a boy of such tender years nothing can be an adequate substitute for mother love—for that constant ministration required during the period of nurture that only a mother can give because in her alone is duty swallowed up in desire; in her alone is service expressed in terms of love. She alone has the patience and sympathy required to mold and soothe the infant mind in its adjustment to its environment. The difference between fatherhood and motherhood in this respect is fundamental and the law should recognize it unless offset by undesirable traits in the mother. Here we have none so far as mother love is concerned." [13]

The role of mothers who stay home and give meticulous care and abundant love to their children of very tender age is one of womankind's noblest and most rewarding functions. Many mothers work at gainful employment, as they have a right to do, and can still provide the mother's care that is so desirable.

It is necessary here for the trial court, if it is to award custody to the mother, to particularize the respects in which it concludes that placement with this particular mother is in the best interests of the child. We therefore remand for a new child custody hearing in which both parents face an equal burden, in light of present circumstances, to show what is in the best interests of the child.

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.

HEFFERNAN, J. *(concurring)*. The court concludes that the trial judge committed an error of law in awarding custody of the now seven-year-old John to his working mother.

The legal error,[1] the opinion contends, became apparent when the trial judge in the following words (excerpted

N. W. 2d 126; *Acheson v. Acheson* (1940), 235 Wis. 610, 614, 294 N. W. 6.

[13] *Jenkins v. Jenkins, supra,* 595.

[1] More properly denominated an abuse of discretion. *State v. Hutnik* (1968), 39 Wis. 2d 754, 763, 159 N. W. 2d 733; *Miller*

from the majority opinion) revealed that he was preferring the defendant mother solely on the basis of her motherhood:

". . . the court feels that the sociological impact of the mother's care, of a mother's interest . . . overcome the other considerations . . . ."

". . . The child needs care, maintenance, and discipline. When the child is sick and running a fever, he needs the mother along side of him. You [the father] are not there. You will not be there and you cannot substitute for the mother of a child, the natural feeling."

". . . You know that isn't possible, Mr. Scolman. I don't care how well intentioned a mother still has the role of being parent, patient, compassionate, humane with the child. Raising of a child is a skill . . . and . . . in this day of women's lib, I don't think men are built for that. I think it is primarily a woman's responsibility to raise the child."

From these quoted portions of the record, the majority opinion (ignoring other portions of the record in which the trial judge gave careful consideration to the financial capabilities of each of the parties, the hours of their employment, and past social histories, and specifically concluded that he was awarding custody because it was in the best interests of the child) appears to conclude that the trial judge based his decision on the mistaken view that the law compelled him arbitrarily to award custody to the mother if she was not "unfit." A review of the record casts doubt upon the majority's conclusion, for other factors than biological motherhood were indeed considered.

Nevertheless, the writer agrees that the trial judge gave undue consideration to the biological fact of motherhood—by definition an attribute that in humans at least is reserved to the female sex.

*v. Belanger* (1957), 275 Wis. 187, 81 N. W. 2d 545; *Estate of Baumgarten* (1961), 12 Wis. 2d 212, 107 N. W. 2d 169.

Thus it appears that what the majority says is that the trial judge, by his emphasis on the qualities of motherhood, has given preference to the mother "solely on the basis of the sex of the parent," contrary to sec. 247.24 (3), Stats.

Yet the court quotes with apparent approval the language of the three-generation-old *Jenkins Case*. Reasonably read, it appears to this writer that *Jenkins*, in rather maudlin terms, mandates an absolute preference for the mother in custody cases involving children of tender years. The language favoring the custody in the biological mother is far more sweeping and arbitrary in *Jenkins* than the language used by the trial judge in this case. Why then condemn the trial judge here for the legal standards employed, if the standards of *Jenkins* are approved.

I am puzzled, moreover, at the legal significance of the dicta, "The role of mothers who stay home and give meticulous care and abundant love to their children of very tender age is one of womankind's noblest and most rewarding functions." This perhaps is true, although, as one of the male sex, the writer is not sure that any of his gender should mouth such aphorisms on behalf of the female gender. Certainly, child rearing and child care, by and large, has worked out very nicely for the males. A substantial portion of parental responsibility has thus been transferred with good conscience to the female, because by it she is "rewarded" and "ennobled."

From the male point of view, it is indeed satisfying to find this attitude now enshrined in a supreme court opinion. If a woman stays at home and cares for her children, she is noble. Indeed, she well may be. But what has that to do with this case?

The mother in the instant case is employed. She will be required to have her child cared for by a baby-sitter or a nursery school. Is the majority paying mere lip

service to the statute, but intimating that it is less noble to be a working mother than a stay-at-home mother. True, there is an instant disclaimer that such is the intention. The ignobility of the working mother is to be forgiven, but only because, parenthetically, she has the "right" to work. What is the relevance of all this in the majority's opinion?

The opinion gives lip service to the statute, but seeks to circumvent it.

The majority opinion concludes that the statute passed in 1971 merely codifies the law previously determined by this court. I do not agree. *Welker v. Welker* (1964), 24 Wis. 2d 570, 578, 129 N. W. 2d 134, relied upon in the majority opinion, states that "The *rule* of preference in custody cases in favor of a mother is a *strong* one." (Emphasis supplied.) For that proposition, *Welker* relies on *Jenkins,* which is quoted in the majority opinion. Yet the majority opinion states that, under Wisconsin law, there is only "a *slight* preference for the mother." (Emphasis supplied.)

It is clear, therefore, that what, before the passage of sec. 247.24 (3), Stats., had been a "strong preference" has now, by a process not made clear, become a "slight preference." The law indeed has been changed—and the change was made by the statute. This court should recognize that the legislative change is greater than that conceded in the majority opinion.

Because of legislative action, this court can give no sex preference in custody cases. It may indeed, and perhaps usually will, give subjective preference to the maternal parent over the paternal parent, not because of the biological difference, but because of the likelihood of better performance, in a particular case, of the *mothering function.* The Oxford New English Dictionary gives as a second definition of the verb, "to mother," "To take care of or protect as a mother." Funk & Wagnalls New Stan-

dard Dictionary gives the example of homes (for children) "where [they] find temporary home and food and rest, and the *mothering* which they need more than all."

Hence, it seems clear that the mothering function, *i.e.*, the giving of love and attention to a child, is not a function of the female parent alone. In a united family, a part of that function can well be, and should be, performed by the father.

In each case where a court is confronted with a question of custody, it must look to the mothering function— where in the best interests of the child will it receive the love, the care, and the attention that will best serve the child's interests. This is, of course, but one factor that a trial court should consider.

In the exercise of judicial discretion it may well be determined that in a particular case the father can better perform that function than can the female parent. No preference at all should or can be given under the law merely because of sex. True, the facts of a particular motherhood—the nursing of an infant child, for example —would compel, except in the case of an exceptionally unfit person, the award of custody to the female parent.

I agree with the majority's conclusion that the cause should be remanded "for a new child custody hearing in which both parents face an equal burden, in light of present circumstances, to show what is in the best interests of the child." I can agree, however, with little of the language or reasoning by which that conclusion is reached. The expressed rationale is too frequently inconsistent and at odds with the salutary result. The rationale of the authorities cited, if followed to its logical conclusion, would have mandated the court to insist that a "strong preference" be given to the maternal parent in a custody dispute. The mawkish, and legally incorrect, language of *Jenkins* should not be afforded a place in modern Wisconsin jurisprudence.

I am authorized to state that Mr. Justice BEILFUSS joins in this concurrence.