STATE, Plaintiff-Respondent, v. HILL,
Defendant-Appellant.

Court of Appeals

*No. 78–802–CR. Submitted on briefs June 13, 1979.—
Decided August 9, 1979.*
(Also reported in 283 N.W.2d 451.)

For the defendant-appellant the cause was submitted on the brief of *Charles W. Oppitz* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Thomas J. Balistreri,* assistant attorney general.

Before Decker, C.J., Cannon, P.J., and Moser, J.

DECKER, C.J. On February 28, 1978,[1] Willie R. Hill was charged in a criminal complaint with interfering

---

[1] This complaint was ultimately dismissed on defense motion. A second complaint, substantially the same, was subsequently reissued.

with the custody of a child contrary to sec. 946.71(4).[2] The defendant was bound over for trial and was found guilty of the offense after trial to a jury on October 5, 1978. Judgment of conviction was entered October 6, 1978, and defendant was sentenced to one-year confinement in the Milwaukee County House of Correction. Defendant appeals from the judgment of conviction.

---

[2] Sec. 946.71 provides:

946.71 Interference with custody of child. Except as provided under ch. 48, whoever intentionally does any of the following is guilty of a Class E felony:

(1) Interferes with the custody of any child under the age of 18 who has been committed or whose legal custody or guardianship has been transferred under ch. 48 to the department of health and social services or to any person, county agency or licensed child welfare agency.

(2) Entices away or takes away any child under the age of 18 from the parent or other person having legal custody under an order or judgment in an action for divorce, legal separation, annulment, custody, paternity, guardianship or habeas corpus with intent to take the child out of the state for the purpose of depriving the parent or other person of the custody of the child without the consent of such parent or other person, unless the court which awarded custody has consented that the child be taken out of the state by the person who so takes the child.

(3) Entices away, takes away or withholds for more than 12 hours beyond the court-approved visitation period any child under the age of 14 from a parent or other person having legal custody under an order or judgment in an action for divorce, legal separation, annulment, custody, paternity, guardianship or habeas corpus without the consent of the legal custodian, unless a court has entered an order authorizing the taking or withholding.

(4) Entices away, takes away or withholds for more than 12 hours any child under the age of 14 from the parents, or the child's mother in the case of a child born out of wedlock and not subsequently legitimated, without the consent of the parents or the mother, unless custody has been granted by the court to the person enticing, taking or withholding the child.

In April, 1975, the defendant began living with Irene Keys[3] in an apartment in Milwaukee. Defendant supported Ms. Keys and her three children, as well as his own two children of a prior marriage. On March 8, 1976, Ms. Keys gave birth to the child whose custody eventually was disputed, precipitating the criminal charge involved.

Between the date of his birth and January 1, 1977, the child lived in the apartment, together with the defendant and his children, and Ms. Keys and her children. On January 1, 1977, Ms. Keys left the apartment and discontinued her relationship with the defendant. The child lived with the defendant for the next seven months,[4] during which time the defendant moved the child to Mississippi.

In July, 1977, Ms. Keys traveled to Mississippi, took physical custody of the child, and returned to Milwaukee. Ms. Keys applied for welfare payments to support the child in Wisconsin. As a result, a paternity action was commenced against the defendant, and he was adjudicated to be the father of the child.[5]

On December 25, 1977, defendant came to Ms. Keys' home to pick up the child to give him a Christmas present. By agreement with Ms. Keys, the child was to be returned by 2 p.m. on that date. The defendant did not return the child, but went to Mississippi where he took up residence.

---

[3] Defendant and Ms. Keys were not married at that time, nor did they subsequently marry.

[4] Ms. Keys continued to see the child from time to time while the child remained in Milwaukee.

[5] On November 8, 1977, defendant admitted in open court that he was the father of the child. Defendant was adjudicated the father by order entered May 30, 1978, in the county court (now circuit) for Milwaukee county.

We address the issues raised on this appeal.

I. DOES SEC. 946.71(4), STATS., DENY EQUAL PROTECTION AND DUE PROCESS OF LAW TO THE DEFENDANT IN PRESUMING THAT A CHILD BORN OUT OF WEDLOCK IS LEGALLY WITHIN THE CUSTODY OF ITS MOTHER AND NOT ITS FATHER?

Defendant maintains that this statute creates a gender-based classification which cannot be justified by any asserted interest of the state. The statute, in presuming and protecting the custodial rights of a mother of a child born out of wedlock from interference while denying similar protection to the father of that child, denies the father equal protection and due process, according to the defendant.

■ Legislative classifications based upon gender will survive constitutional challenge when substantially related to the achievement of important governmental objectives. *Califano v. Webster,* 430 U.S. 313, 316–17 (1977) ; *Califano v. Goldfarb,* 430 U.S. 199, 219 (1977) ; *Craig v. Boren,* 429 U.S. 190, 197 (1976).

■ A child has a right to be reared in a safe and stable environment. To that end, the state imposes a duty on a parent[6] or legal custodian[7] to provide such an environment for a child. Section 946.71, Stats., constitutes the state's recognition of its duty to protect the rights of children to live in such an environment. Unquestionably, protection of this right is an important governmental objective. *Marotz v. Marotz,* 80 Wis.2d 477, 486, 259 N.W.2d 524 (1977) ; *Quilloin v. Walcott,* 434 U.S. 246,

[6] *See Cole v. Sears, Roebuck & Co.,* 47 Wis.2d 629, 634, 177 N.W. 2d 866 (1970) ; *Niesen v. Niesen,* 38 Wis.2d 599, 602, 157 N.W.2d 660 (1968).

[7] *See* sec. 48.02(12), Stats.

255 (1978); *Stanley v. Illinois,* 405 U.S. 645, 649–52 (1972).

The statute categorizes and accords different protection to fathers of children born out of wedlock and not subsequently legitimated, as opposed to the mothers. Clearly the differential protection accorded is not predicated on the "presumption that women make better parents than men."[8] The classification is based upon a fact of nature: the mother is present at birth, the maternal parentage is unquestioned, and the mother continues to nurture and care for the child after birth. A child born out of wedlock is not attended by a statutory presumption of paternal parentage. Sec. 891.39(1)(a), Stats. At birth, and possibly for some length of time thereafter, the natural father of the child has not been so adjudicated, nor in the situation we address here was the child subsequently legitimated by marriage of the parents.

The statute seeks to protect the child's right to a safe and stable environment by proscribing interference therein by parties outside of that environment. The right of the father of an illegitimate child to exercise his parental rights is not arbitrarily denied. *See Stanley v. Illinois, supra.* The state in all respects encourages the assertion and exercise of those rights. In the interests of the child, however, the state insists that the father resort to readily available legal processes to establish and effectuate those rights.[9]

---

[8] App. Brief at 15.

[9] We note that at no time prior to his conviction did the defendant utilize the procedures available to him to establish his natural parentage of the child. *See Slawek v. Stroh,* 62 Wis.2d 295, 215 N.W.2d 9 (1974); 58 M.U.L.R. 175 (1975). Pursuant to such proceedings, a custody determination would be made without consideration of the sexes of the contesting parties. *See Scolman v. Scolman,* 66 Wis.2d 761, 226 N.W.2d 761, 226 N.W.2d 388 (1975).

■

The classification applicable to the circumstances of this case comports with provisions of ch. 52, Stats., that limit the obligation to the child of an adjudicated father in a paternity proceeding to financial support. The mother of that child has the statutory obligation of care and control, and the statute involved in this case comports with that duty. Thus, the substantial interests of the state in protecting minor children born out of wedlock are furthered in a manner that meets equal protection requirements, because there are substantial reasons for distinguishing the class.

## II.  IS SEC. 946.71(4), STATS., VOID FOR VAGUENESS?

■

The defendant attacks the statute for vagueness on the basis that the terms "parents" and "not subsequently legitimated" are not properly defined so as to give notice of the conduct made criminal by the statute.

An allegation that a statute is vague is based upon the procedural due process requirement of fair notice. The primary issue raised by such challenge is whether the statute taken as a whole is sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise the judge and jury of standards for the determination of guilt. (Footnote omitted.) *Butala v. State,* 71 Wis.2d 569, 573-74, 239 N.W.2d 32, 34 (1976).

A statute is void for vagueness when men of common intelligence must guess at its meaning and differ as to its applicability. *State v. Zwicker,* 41 Wis.2d 497, 164

---

Thereafter, the custodial rights of the defendant as a "parent" would be protected by the provisions of the statute in issue. *See* sec. 48.02(13), Stats., and 946.71(3), Stats.

N.W.2d 512 (1969). A statute is not void for vagueness
if it gives reasonable warning to one bent on obedience to
the law when his conduct comes perilously close to that
which is proscribed, and reasonable direction to the trier
of fact to permit proper determination when that conduct
has come too close to the line of proscribed conduct. *State
v. Tronca,* 84 Wis.2d 68, 86, 267 N.W.2d 216 (1978). We
believe the defendant's challenge of the statute on this
basis is without merit.

The terms "parents" and "not subsequently legiti-
mated" are not defined in sec. 946.71, Stats. However, a
statute is sufficiently definite if the meaning of its terms
can be learned by referring to ordinary sources of con-
struction. *Cf. State v. Chippewa Cable Co.,* 21 Wis.2d
598, 606, 124 N.W.2d 616 (1963); *State v. Arnold,* 217
Wis. 340, 345, 258 N.W. 843 (1935). To that end sec.
990.01(1), Stats., provides: "All words and phrases shall
be construed according to common and approved usage;
but technical words and phrases and others that have a
peculiar meaning in the law shall be construed according
to such meaning."

The meaning of the word "parent" and the phrase "not
subsequently legitimated" may readily be ascertained by
reference to their definition in the Wisconsin statutes.
The meaning of "parent" in Wisconsin law is defined in
sec. 48.02(11) (1975), which was in effect at the time of
the offense in question.[10] That statute provides: " 'Par-
ent' means either a natural parent or a parent by adop-

---

[10] Sec. 48.02(11), Stats. (1975), was repealed and recreated
as sec. 48.02(13) by 1977 Wis. Laws, ch. 354, §5, effective Novem-
ber 18, 1978, and provides:

" 'Parent' means either a biological parent or a parent by adop-
tion. If the child is born out of wedlock but not subsequently
legitimated or adopted, 'parent' includes a person adjudged in a
judicial proceeding to be the biological father. 'Parent' does not
include any person whose parental rights have been terminated.

tion. If the child is born out of wedlock but not subsequently legitimated or adopted, 'parent' means the natural mother and a person adjudged in a court proceeding to be the natural father."

The meaning of "not subsequently legitimated" can be ascertained by reference to sec. 245.25, Stats., entitled "Legitimation of Children," which provides in pertinent part: "In any case where the father and mother of any child or children born out of wedlock shall lawfully intermarry, except where the parental rights of the mother were terminated prior thereto, such child or children shall thereby become legitimated and enjoy all rights and privileges of legitimacy . . . ."

The technical meaning of the challenged terms are delineated with specificity in the statutory sections quoted above. The statute clearly gives reasonable notice of proscribed conduct to persons bent on obedience of the law and is not void for vagueness.

As an adjunct of this argument, defendant points out that the trial court, in a pretrial ruling on his vagueness challenge to the statute, stated the following with regard to the meaning of the phrase "not subsequently legitimated": "Well, I think historically we know what it means, where a person hasn't been adjudicated the father of the child, that's what is [sic] means, it's simple."

Subsequently, over the objection of the defendant, the trial court charged the jury as to the correct meaning of the phrase: "In any case where the father and mother of a child born out of wedlock shall lawfully intermarry such child shall be legitimated." The defendant characterizes this corrective construction on the part of the trial court as unconstitutional. He maintains that the subsequent construction constituted sec. 946.71(4), Stats., an *ex post facto* law and denied him due process.

We find no merit in this contention. An erroneous legal construction was initially placed upon the phrase by the trial court. Given time to reflect, the trial court corrected its erroneous interpretation of the law prior to submission of the case to the jury. Our reading of the record convinces us that the trial court did so without prejudice to the defendant's case.

In his brief before this court, the defendant asserts that he relied upon the trial court's pretrial interpretation of this phrase and defended against the charge on the basis that the child was subsequently legitimated: defendant was adjudicated the father of the child on May 30, 1978.

Assuming, *arguendo,* that defendant's assertions regarding his trial defense are true,[11] it was clear to the defendant and his counsel that the child had not been "subsequently legitimated," as the statute was initially interpreted by the trial court, on the date that the child was taken from its mother. The child was taken from the mother on December 25, 1977. The adjudication on which the "defense" was premised occurred on May 30, 1978.

On its face, the statute limits the defense of "subsequent legitimation" to instances in which the "legitimation" has occurred at the time the child is enticed or taken away or withheld from the mother. We consider frivolous defendant's argument that he reasonably believed that the consequences of his criminal actions could be avoided by virtue of an adjudication occurring five months after the act.

---

[11] It appears to this court from a reading of the record that the sole thrust of the trial defense was to attempt to evoke sympathy for the defendant's actions from the jury by attempting to establish neglectful actions on the part of the child's mother.

The challenges to sec. 946.71(4), Stats., interposed by the defendant are without merit. The judgment of conviction is accordingly upheld.

*By the Court.*—Judgment affirmed.